No. 55,037

STATE OF KANSAS, *Plaintiff-Appellant,* v. CHESTER NEWMAN,
*Defendant-Appellee.*

(680 P.2d 257)

Review of the judgment of the Court of Appeals in an unpublished decision filed October 6, 1983. Opinion filed March 24, 1984.

*Kenneth R. Smith,* assistant attorney general, argued the cause, and *Robert T. Stephan,* attorney general, *Timothy G. Madden,* assistant attorney general, and *William H. Pringle,* county attorney, were on the brief for the appellant.

*Jerry M. Ward,* of Ward & Berscheidt, of Great Bend, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is an interlocutory appeal taken by the State from pretrial orders of the district court of Barton County suppressing certain evidence of the State and excluding the same from the trial of the defendant, Chester Newman. The defendant was charged with arson, K.S.A. 21-3718; burglary, K.S.A. 21-3715; and theft, K.S.A. 21-3701(*a*). The Court of Appeals in an

unpublished opinion dismissed the interlocutory appeal for want of jurisdiction. The Supreme Court granted the State's petition for review.

For purposes of this appeal, the facts are undisputed. On January 12, 1982, the Good Times Club located in Barton County was damaged by fire. An investigation revealed arson as the cause; stereo equipment located within the club was discovered missing after the fire. In the course of their investigation, Barton County sheriff's officers interviewed Catherine Newman, defendant's wife. She told them what she had observed the night of the fire concerning the defendant's activities. She stated that she had accompanied defendant to Hutchinson where she observed defendant sell stereo equipment. The officers, using this information, went to Hutchinson and located the purchaser and also the stereo equipment allegedly stolen from the club prior to the fire. The purchaser of the equipment identified defendant Newman as the one from whom he made the purchase. Defendant was subsequently charged with arson, burglary, and theft.

Prior to the pretrial conference, defendant filed a motion to suppress his wife's testimony and all testimony and evidence obtained as a result of her statements to investigating officers. The prosecution filed a motion to endorse additional witnesses who would testify as to evidence of a prior crime allegedly committed by defendant in Russell County for which defendant had been tried and acquitted. The trial court took both motions under advisement and subsequently sustained the defendant's motion and denied the prosecution's motion. Additional and more specific facts will be presented later in the opinion.

The State filed this interlocutory appeal pursuant to K.S.A. 22-3603 which provides as follows:

"22-3603. **Interlocutory appeals by the state.** When a judge of the district court, prior to the commencement of trial of a criminal action, makes an order quashing a warrant or a search warrant, *suppressing evidence* or suppressing a confession or admission an appeal may be taken by the prosecution from such order if notice of appeal is filed within ten (10) days after entry of the order. Further proceedings in the trial court shall be stayed pending determination of the appeal." (Emphasis supplied.)

Defendant contends that this court does not have jurisdiction to hear the interlocutory appeal and that the court should dismiss the appeal. It is the position of the State that the district court made an order suppressing evidence which is' essential to its

case and it, therefore, is entitled to an interlocutory appeal. The determination of the issue presented requires us to consider K.S.A. 22-3603 and the Kansas decisions which discuss the scope of the issues which will be considered on an interlocutory appeal by the State. This specific question has never before been presented to the Supreme Court.

In dismissing the State's interlocutory appeal in this case, the Court of Appeals relied upon its decision in *State v. Boling*, 5 Kan. App. 2d 371, 617 P.2d 102 (1980), which provides an extensive discussion on the jurisdiction of a Kansas appellate court to hear an interlocutory appeal by the State under K.S.A. 22-3603. Simply stated, *Boling* made a distinction between a trial court ruling suppressing evidence obtained in violation of constitutional rights and a ruling excluding evidence because of the statutory rules of evidence. It concluded that interlocutory appeals may properly be taken from the former but not from the latter. In *Boling*, the court noted that piecemeal appeals are frowned upon in this state, particularly in criminal cases, where the defendant's constitutional right to a speedy trial is involved. *State v. Ramirez*, 175 Kan. 301, 263 P.2d 239 (1953). The Court of Appeals was obviously concerned about unnecessary delays which would occur in criminal prosecutions, if the State were permitted to appeal every evidentiary ruling of a trial court entered prior to trial.

The opinion in *Boling* acknowledged that the Kansas cases have implicitly recognized appellate jurisdiction of interlocutory appeals from an order which prohibits the introduction of relevant evidence for reasons other than the involuntariness of a confession or the illegality of a search and seizure under K.S.A. 22-3215 and 22-3216. In this regard *Boling* stated:

"Nevertheless, in each of those cases the order had a purpose closely akin to that of the general exclusionary rule. That is, it served either to vindicate constitutional rights or as a sanction for official conduct deemed prejudicial to the defendant, and in either case to deter such conduct in the future.

"When 'other crimes' evidence is examined against the kinds of evidence which have been subject to 'suppression' orders which have been found appealable, it is apparent that there is a qualitative difference. Under [*State v.*] *Bly* [215 Kan. 168, 523 P.2d 397 (1974)] and cases following it, the admissibility of evidence of other crimes or civil wrongs depends on a weighing of relevance and materiality against possible prejudice. The court here found that the proposed evidence would be 'not very material.' This is the type of discretionary eviden-

tiary ruling made regularly in the course of every trial. No constitutional rights are involved and no deterrent effect is sought." pp. 377-78.

*Boling* was recently cited in *State v. Martin,* 233 Kan. 148, 150, 660 P.2d 563 (1983), where the court said:

"The purpose of K.S.A. 22-3603 is to permit appellate review of pretrial rulings which may be determinative of the case. *State v. Burnett,* 222 Kan. 162, 166, 563 P.2d 451 (1977). See also *State v. Boling,* [citation omitted], which provides a thorough analysis of the statutory scheme and the difference between an order 'suppressing' evidence obtained in violation of constitutional rights and one 'excluding' evidence because of evidentiary rules."

It is important to note that the precise jurisdictional issue presented in this case was not before the court in *State v. Martin,* which simply held that K.S.A. 22-3603 does not permit the State to take an interlocutory appeal from a trial court's order holding the State could not grant a witness immunity from prosecution for perjury. The opinion in *Martin* emphasizes the trial court had not entered an order suppressing or excluding evidence proffered by the State.

In discussing K.S.A. 22-3603, the court in *Boling* observed that the statute, by permitting review before trial, eliminates the double jeopardy problems arising where the State secures a reversal of a trial court's evidentiary ruling, but only after trial and acquittal. It noted that the purpose of K.S.A. 22-3603 is described by the Judicial Council comment to the statute as follows:

"The foregoing sections are intended to permit Supreme Court review of trial court rulings on pretrial motions *which may be determinative of the case.* The committee believed that in the case of trial court rulings which suppress evidence essential to proof of a prima facie case, the prosecution should have an opportunity for review in the Supreme Court if a substantial question exists as to the correctness of the trial court's decision." (Emphasis supplied.)

The Judicial Council comment was relied upon by the court in upholding the constitutionality of K.S.A. 22-3603 in *State v. Burnett,* 222 Kan. 162, 166, 563 P.2d 451 (1977).

The *Boling* opinion then turned to other sections of the Kansas Code of Criminal Procedure to find what an order "suppressing evidence" is. Those sections are K.S.A. 22-3215 which authorizes a pretrial motion to "suppress" a confession or admission, and K.S.A. 22-3216 which authorizes a pretrial motion to "suppress" illegally seized evidence. The *Boling* court concluded that these two statutes together with K.S.A. 22-3603 provide an

integrated statutory scheme for dealing with important—indeed essential—evidentiary rulings on issues having constitutional dimensions. However, the court stated that the scheme does not envision an interlocutory appeal on every run-of-the-mill evidentiary ruling against the State, even though made before trial.

*Boling* relied primarily upon an Illinois case, *People v. Van De Rostyne*, 63 Ill. 2d 364, 349 N.E.2d 16 (1976), as the basis for recognizing a distinction between evidence suppressed on constitutional grounds and evidence excluded on evidentiary grounds. The Illinois Supreme Court in that case held that an interlocutory appeal by the State was to be allowed only when the order excluding evidence was based on the involuntariness of a confession or the illegality of a search and seizure. At the time *Boling* was handed down, the Court of Appeals did not have the benefit of *People v. Young*, 82 Ill. 2d 234, 412 N.E.2d 501 (1980), where the Illinois Supreme Court rejected the narrow interpretation of *Van De Rostyne* and held that the State may appeal from a pretrial suppression order which substantially impairs its ability to prosecute the case involved. *Young*, therefore, held that the term "suppressed evidence" was to have a broader meaning than evidence which is illegally obtained. Thus the Illinois courts today do not apply the "constitutional/evidentiary distinction" between pretrial orders as made in *Van De Rostyne* and by the Kansas Court of Appeals in *Boling*.

As noted in *Boling*, in Kansas we have at least three cases which would indicate that the broader interpretation of the term "suppressing evidence" in K.S.A. 22-3603 prevails here. In *State v. Dotson*, 222 Kan. 487, 565 P.2d 261 (1977), this court, without mention of the jurisdictional question, entertained an interlocutory appeal by the State from a pretrial order suppressing an out-of-court identification. In *State v. Eubanks*, 2 Kan. App. 2d 262, 577 P.2d 1208, *rev. denied* 225 Kan. 846 (1978), the Court of Appeals, again without mention of the jurisdictional question, entertained an interlocutory appeal by the State from an order suppressing the testimony of a police officer who could not produce his field notes. A third case is *State v. Wilkins*, 220 Kan. 735, 556 P.2d 424 (1976), which held in an interlocutory appeal by the State that the district court did not abuse its discretion under the circumstances of the case by conditionally striking the testimony of two prosecution witnesses, the State having lost the

written statements of the witnesses and thus being unable to produce them when ordered to do so pursuant to K.S.A. 22-3213(2). We also note *State v. Williams*, 4 Kan. App. 2d 651, 610 P.2d 111 (1980), which determined an interlocutory appeal by the State pursuant to K.S.A. 22-3603 from the order of a district court suppressing the results of a blood test.

The Court of Appeals in its unpublished opinion in this case stated as follows:

"This case demonstrates the desirability of allowing interlocutory appeal by the State in situations in which such an appeal is not currently available. In cases such as this where the evidence excluded may have been determinative of the case (see *State v. Burnett*, 222 Kan. 162, 563 P.2d 451 [1977]), and where the State's admissible evidence is so depleted that the State cannot in good conscience continue prosecution, some opportunity to appeal should be available. However, as we understand K.S.A. 22-3603 and cases decided under that statute, no such relief is currently authorized. We therefore dismiss for lack of jurisdiction."

We have concluded that the narrow interpretation of the term "suppressing evidence" in K.S.A. 22-3603 set forth in *Boling* should be rejected and should not be followed in this state. We hold that the term "suppressing evidence" as used in that statute is to have a broader meaning than the suppression of evidence which is illegally obtained. It should include not only "constitutional suppression" but also rulings of a trial court which exclude State's evidence so as to substantially impair the State's ability to prosecute the case. This was the rule adopted by the Supreme Court of Illinois in *People v. Young*.

This broader interpretation is also consistent with the standards relating to criminal appeals adopted by the American Bar Association Project on Standards for Criminal Justice. Standards Relating to Criminal Appeals § 1.4 (1970), provides in part as follows:

"1.4 Prosecution appeals.

"(a) The prosecution should be permitted to appeal in the following situations:

"(i) from judgments dismissing an indictment or information on substantive grounds, such as the unconstitutionality of the statute under which the charge was brought, or for failure of the charging instrument to state an offense under the statute;

"(ii) from other pretrial orders that terminate the prosecution, such as upholding the defenses of double jeopardy, autrefois convict, autrefois acquit, or denial of speedy trial;

"(iii) *from pretrial orders that seriously impede, although they do not techni-*

*cally foreclose, prosecution, such as orders granting pretrial motions to suppress evidence or pretrial motions to have confessions declared involuntary and inadmissible.*
Such judgments are likely to rest upon principles that ought to be clearly and uniformly applied throughout the state." (Emphasis supplied.) pp. 8-9.

We are convinced that this broad interpretation of K.S.A. 22-3603 is consistent with the stated purpose of that section as expressed by the Judicial Council comment at the time it was adopted—that the section is intended to permit appellate review of trial court rulings on pretrial motions *which may be determinative of the case.* We wish to emphasize, however, that the appellate courts of Kansas should not take jurisdiction of the prosecution's interlocutory appeal from every run-of-the-mill pretrial evidentiary ruling of a district court, especially in those situations where trial court discretion is involved. Interlocutory appeals are to be permitted only where the pretrial order suppressing or excluding evidence places the State in a position where its ability to prosecute the case is substantially impaired.

In order to carry out this purpose of permitting interlocutory appeals by the State only in the cases referred to, the prosecutor should be prepared to make a showing to the appellate court that the pretrial order of the district court appealed from substantially impairs the State's ability to prosecute the case. Such a showing may be required either on order of the appellate court or when appellate jurisdiction of the interlocutory appeal is challenged by the defendant-appellee. Based upon the reasoning set forth above, we take jurisdiction of the State's interlocutory appeal in this case and will proceed to determine those issues which we find fall into the category of trial rulings which substantially impair the State's ability to prosecute the case.

The first issue to be determined is whether the trial court erred in holding that the proffered testimony of defendant's wife, Catherine Newman, was inadmissible at trial, because such testimony was privileged under K.S.A. 60-423(*b*) and 60-428(*a*) of the Kansas Code of Civil Procedure which is applicable in criminal proceedings. At the preliminary hearing, the State advised the court that the wife's testimony would be in substance as follows: That on the night the Good Times Club burned down, Catherine Newman was awakened by her husband, the defendant; that he left home, then returned and got a crowbar, and left again. That they drove in their car near the Good Times Club and

saw that it was on fire. After they returned to their home, she saw her husband unloading stereo speakers including those taken from the Good Times Club. Later, she and defendant went to Hutchinson where she was present when certain conversations took place between her husband and John Palmer in regard to the purchase of the stereo components. She observed her husband sell the same to Tom Mule. She and her husband then returned to their home at Great Bend. The trial court suppressed this evidence in its entirety, holding that the marital privilege applied.

It should be noted that this evidence falls into three categories:

(1) Conversations in private between Catherine and defendant;

(2) acts of the defendant in handling the stereo components and their observation of the burning of the Good Times Club;

(3) conversations and acts of defendant which were a part of the negotiations and sale of the stereo components at Hutchinson in the presence of third persons. In the trial court, the State did not offer to have Catherine Newman testify *as to her conversations with defendant when they were alone.* The proffered testimony concerned only the acts of defendant observed by Catherine Newman and the transaction, including defendant's conversations and acts, having to do with the purchase and sale of the speakers in Hutchinson by and to third persons.

The trial court suppressed the State's proffered testimony on the basis of K.S.A. 60-423(*b*) and K.S.A. 60-428(*a*), holding that all of defendant's acts and conversations constituted privileged confidential communications within the statutory provisions.

K.S.A. 60-423(*b*) provides:

"(*b*) An accused in a criminal action has a privilege to prevent his or her spouse from testifying in such action with respect to any *confidential communication* had or made between them while they were husband and wife, excepting only (1) in an action in which the accused is charged with (i) a crime involving the marriage relation, or (ii) a crime against the person or property of the other spouse or the child of either spouse, or (iii) a desertion of the other spouse or a child of either spouse, or (2) as to the communication, in an action in which the accused offers evidence of a communication between himself or herself and his or her spouse." (Emphasis supplied.)

K.S.A. 60-428(*a*) provides:

"(*a*) *General rule.* Subject to K.S.A. 60-437 and except as otherwise provided in

subsections (*b*) and (*c*) of this section, *a spouse who transmitted to the other the information which constitutes the communication,* has a privilege during the marital relationship which he or she may claim whether or not a party to the action, to refuse to disclose and to prevent the other from disclosing *communications* found by the judge to have been had or made in confidence between them while husband and wife. The other spouse or either his or her guardian or conservator may claim the privilege on behalf of the spouse having the privilege." (Emphasis supplied.)

We will first consider the admissibility of the wife's testimony as to defendant's conversations and actions in Hutchinson where third parties were present. This testimony of Catherine Newman was clearly admissible under this court's decision in *State v. Glover*, 219 Kan. 54, 547 P.2d 351 (1976), which held that a communication between a husband and wife in the presence of or overheard by a third person is not within the protection of the privilege granted by K.S.A. 60-423(*b*). In *Glover* the court stated:

"The general rule concerning confidentiality is stated in 81 Am. Jur. 2d, Witnesses, § 155, in these words:

" '. . . [T]he broad general rule followed by nearly all of the courts is that a conversation, communication, or transaction between husband and wife, or a statement made by one to the other, in the presence of or overheard by a third person is not within the protection of the privileged communications rule. . . .' (p. 194.)

"See, also 97 C.J.S., Witnesses, § 268, pp. 766-768. In Vol. VIII Wigmore, Evidence in Trials at Common Law, [Revised by McNaughton], § 2336, pp. 650-651, the author succinctly states:

" '. . . Commonly, the *presence of a third person* within hearing will negative a marital confidence; so, too, the *intended transmission* of the communication to a third person. . . .'

"While *State v. Gray*, 55 Kan. 135, 39 Pac. 1050, was decided many years before the enactment of 60-423(*b*), the holding therein accords with the authorities mentioned and the import of the statute as we read it. In the *Gray* opinion it is stated:

" '. . . Communications between husband and wife are not confidential when made in the presence of third parties. . . .

. . . . .

" '. . . Whatever is said in the presence and hearing of third persons has none of the characteristics or attributes of a confidential communication. There is no secrecy about it. It is then published to the witnesses, who are in no sense parties to the conjugal relation. . . .' (pp. 143-144.)" p. 58.

Based upon *Glover*, we have no hesitancy in holding that whatever communications occurred in this case while a third person was present are not confidential communications pro-

tected by the statutory marital privilege. The trial court thus erred by excluding that portion of the proffered testimony of Catherine Newman.

The next question is whether Catherine Newman's observations of defendant's actions, as distinguished from his words, constitute protected confidential communications under the marital privilege. In other words, is a spouse's act a communication within the meaning of the statutory provision? We think it clear that certain acts consisting of gestures or signs or body movements may constitute a privileged communication. Thus, there may be types of nonverbal communications which should properly be considered as communications within the meaning of the statute. The issue we have presented here, however, is whether a wife's observation of her husband's actions in taking possession of and handling stolen property would constitute a *communication* within the marital privilege.

This is a novel question which has not heretofore been presented to the Kansas appellate courts. Simply stated, the question is this: Is the marital privilege limited to information directly and intentionally conveyed by words, oral or written, or does it include information derived by one spouse from *observations of the acts* of the other? At the outset, we must recognize that there is a great deal of conflict in the decisions of various courts throughout the United States as to the admissibility of a spouse's testimony as to his or her observation of particular acts of the husband or wife. The present weight of authority in the United States is on the side of including observations of a spouse's acts as being within the scope of confidential marital communications. There is an extensive annotation on this subject in 10 A.L.R.2d 1389, where many cases on both sides of the issue are discussed. The general rule is also recognized and cases are set forth in 81 Am. Jur. 2d, Witnesses §§ 161 through 166.

We note, however, that the modern trend of the cases and the preponderance of the learned treatises written on the subject are against such a broad and liberal interpretation of the marital privilege. 8 Wigmore on Evidence § 2337 (McNaughton Rev. 1961), observes:

"§2337. **Communications, not noncommunicative acts.** The privilege has for its object the security from apprehension of disclosure—a security in consequence

of which confidences will be freely given and not withheld. The protection therefore extends only to *communications,* not to acts which are in no way communications. The reasoning is analogous to that which establishes a similar limitation for communications between attorney and client . . . .

"Nevertheless, the statutes in some jurisdictions extend the privilege to knowledge of any fact acquired in the marital relation. There is at first sight some plausibility in this extension. The confidence, it may be argued, which the husband or wife desires, and the freedom from apprehension which the privilege is designed to secure, must be supposed to be equally desirable for noncommunicative conduct as for communications.

"The difficulty with this argument is that it goes too far. The rationale of the privilege is clearly inapplicable to a case, for example, where the wife, unknown to the husband, observes him disposing of a dead body in the outhouse. Since the husband did not take the wife into his confidence, it would be nonsense for the tribunal to deprive itself of the wife's evidence on the ground that compulsory disclosure in such cases would discourage marital confidence." p. 657.

McCormick on Evidence § 79, p. 165 (2d ed. 1972) urges similar restriction of the marital privilege on the basis that extensions beyond verbal or written communications are unjustified. The authorities and the cases which take the position that observed acts should not be included within the privilege do so on the basis that public policy favors such a restrictive construction of the privilege, since observations of criminal actions are not the type of communication contemplated by the privilege of confidential communication as being in the public interest to preserve a well-ordered, civilized society by preserving the peace and harmony of a family. See for example *Kerlin v. State,* 352 So. 2d 45 (Fla. 1977).

A reason for the wide variation in the rules applied in the various jurisdictions is that the rules of evidence of some states are based upon common law court decisions, and also because the statutory language may vary from state to state. Some of the state statutes expressly include observed acts as well as communications within the scope of the marital privilege.

The task presented to us in this case is to interpret the Kansas statutes in a manner consistent with what we find to be the intention of the framers of the Kansas Code of Civil Procedure and in a way most beneficial to the people of this state. In K.S.A. 60-407, the general principle of law is adopted that *all relevant evidence is admissible unless there is a specific statute excluding some particular type of evidence.* K.S.A. 60-407 states, without equivocation, that, except as otherwise provided by statute, every person is qualified to be a witness; no person has a

privilege to refuse to be a witness; no person is disqualified to testify to any matter; no person has a privilege to refuse to disclose any matter or to produce any object or writing; and no person has a privilege that another shall not be a witness or shall not disclose any matter or shall not produce any object or writing. It is thus the philosophy of the Kansas Code of Civil Procedure that relevant evidence is admissible unless some public policy expressed by statute excludes it.

It should be noted that K.S.A. 60-428(*a*) states that a spouse, *who transmitted to the other the information which constitutes the communication,* has a privilege during the marital relationship. This language is important. It emphasizes that to have a communication there must be a transmission of information. It is difficult to see how the term "communication" could logically mean anything else. This same concept of the term "communication" is contained in the other privilege sections of the Kansas code. K.S.A. 60-426(*c*)(2) defines a communication between an attorney and client as including *advice* given by the lawyer in the course of representing the client and includes *disclosures* of the client. Clearly a communication here means a transmission of information between the attorney and the client.

K.S.A. 60-427(*a*)(4) defines a confidential communication between physician and patient as meaning such information transmitted between physician and patient, including information obtained by an examination of the patient, as is transmitted in confidence. K.S.A. 60-429(*a*)(5) states that "penitential communication" means any communication between a penitent and a regular or duly ordained minister of religion which the penitent intends shall be kept secret and confidential and which pertains to advice or assistance in determining or discharging the penitent's moral obligations.

Considering these various sections of the Kansas code and the public interest involved, we have concluded that the statutory marital privilege between husband and wife does not extend to all observations of the acts of one spouse by the other. The marital privilege is limited to spoken or written statements or nonverbal signs or gestures seeking to transmit information from one spouse to the other. We hold that the trial court erred in suppressing the State's proffered testimony of Catherine Newman as to her observation of the actions of the defendant in

handling the stereo components and his actions in Hutchinson at the time the sale of the stereo components was negotiated and consummated.

The State also appeals the order of the district court suppressing all of the evidence in the case, including tangible evidence and the proffered testimony of witnesses, which was developed as the result of statements made by Catherine Newman to the investigating officers and to the county attorney. The record discloses that on February 2, 1982, approximately three weeks after the fire at the Good Times Club, defendant's wife gave a statement under oath before the Honorable Don Alvord, district magistrate of Barton County. At that time, Catherine Newman was interrogated by Officer Teel of the sheriff's office and by the assistant county attorney. This transcribed statement shows that Mrs. Newman was given the *Miranda* warnings and was fully advised as to her constitutional rights. In this statement, Mrs. Newman told of her husband's actions on the night of the fire, including his handling of the stereo equipment mentioned above, and also about certain communications with her husband on that evening. She also testified as to the transaction between her husband and third persons in connection with the negotiation and sale of the stereo equipment to a buyer in Hutchinson.

Defendant moved to suppress not only the testimony of Catherine Newman but also the testimony of all witnesses and tangible evidence subsequently uncovered by the investigating officers as a result of the statement given by Catherine Newman mentioned above. It was the contention of defendant that all of this evidence was inadmissible, because the testimony of Catherine Newman was privileged by reason of K.S.A. 60-423(b) and 60-428(a), and all of the evidence and testimony later obtained was the "fruit of the poisonous tree" resulting from the violation of the marital privilege. The district court sustained the motion on that basis. The issue presented requires us to consider the nature and purpose of the "fruit of the poisonous tree" doctrine.

In *State v. McBarron*, 224 Kan. 710, 714, 585 P.2d 1041 (1978), the court noted:

"The fruit of the poisonous tree doctrine is one facet of the exclusionary rule of evidence, which bars the admissibility in a criminal prosecution of evidence obtained in the course of unlawful searches and seizures. In that context, the fruit of the poisonous tree doctrine is held to extend the scope of the exclusionary rule to bar not only evidence directly seized but also evidence indirectly obtained as a

result of information learned or leads obtained in the unlawful search. When applicable, the fruit of the poisonous tree doctrine bars not only derivative physical evidence, but also derivative testimonial evidence, such as confessions and admissions obtained as a result of confronting the accused with information learned in an unlawful search, and the testimony of witnesses discovered as a result of an unlawful search. *Wong Sun v. United States,* 371 U.S. 471, 9 L.Ed.2d 441, 83 S.Ct. 407 (1963); *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 64 L.Ed. 319, 40 S.Ct. 182 (1920); *Nardone v. United States,* 308 U.S. 338, 84 L.Ed. 307, 60 S.Ct. 266 (1939). The doctrine of the fruit of the poisonous tree was considered in *State v. Deffenbaugh,* 216 Kan. 593, 533 P.2d 1328 (1975) and in *State v. Childers,* 222 Kan. 32, 563 P.2d 999 (1977)."

The initial question usually presented in cases where the fruit of the poisonous tree doctrine is invoked is whether the proffered evidence came into police hands as a result of unlawful police conduct. It is stated that the purpose of the doctrine is to prevent the State from using, in any manner prejudicial to the accused, information derived from facts learned as a result of the unlawful acts of its agents and to deter illegal and unconstitutional actions on the part of the police. Although we have no Kansas cases on the subject, there are a number of cases throughout the country holding that, where there has been no unlawful police conduct, the reason for the rule fails and, therefore, the fruit of the poisonous tree doctrine should not be applied.

In *Clark v. State,* 159 Tenn. 507, 19 S.W.2d 228 (1929), the defendant's wife gave statements to certain officers in regard to the defendant's actions. Based upon this information, the officers made further investigation and obtained evidence of third parties on the basis of which the defendant husband was convicted. It was contended by defendant that, since the wife disclosed information in violation of the marital privilege, information and testimony resulting from her disclosure were incompetent. The Supreme Court of Tennessee rejected this contention. The court conceded that the wife would have been an incompetent witness against her husband as to these matters. There was no rule of law, however, which prevented a third person from instituting criminal proceedings based on facts learned through information given by the wife of the accused. The same rule was followed in *Quinn v. State,* 55 Okla. Crim. 116, 25 P.2d 711 (1933), which held, under similar factual circumstances, that facts which have been discovered by a competent witness are not to be excluded because the witness may have been put on track of them by

information coming from the defendant or his wife. In *State v. O'Bremski,* 70 Wash. 2d 425, 423 P.2d 530 (1967), the Supreme Court of Washington noted that the exclusionary rule is neither a statutory enactment nor an express provision of the Fourth Amendment to the United States Constitution. It is rather a command, judicially implied, intended to impose restraints upon law enforcement officers and to discourage abuse of authority when constitutional immunity from unreasonable search is involved, citing *Mapp v. Ohio,* 367 U.S. 643, 6 L.Ed.2d 1081, 81 S.Ct. 1684 (1961). It noted that in each case the rights of the accused must be balanced against the rights of the public.

In a later case, *State v. Osborne,* 18 Wash. App. 318, 569 P.2d 1176 (1977), the Washington court held that the fruit of the poisonous tree doctrine does not apply to bar the admission of evidence derived from facts obtained from the wife that would not have been admissible at the trial under the marital privilege. A recent case holding to the same effect is *Bishop v. State,* 582 S.W.2d 86 (Tenn. Crim. App. 1979).

We have concluded that the trial court erred in suppressing the tangible evidence and the testimony of witnesses who were discovered by police investigation as a result of the statement given by Catherine Newman before the magistrate in Barton County. There is no contention, nor is there any evidence whatsoever in the record showing that the statement given by Catherine Newman was involuntary or obtained in any manner in violation of her constitutional rights. As discussed above, under the statutory marital privilege the defendant husband had the right to prevent his wife from testifying at the trial as to confidential communications between them. That privilege, however, does not bar the testimony of other witnesses discovered as the result of information lawfully obtained from defendant's wife. We hold that the fruit of the poisonous tree doctrine is not applicable in the absence of a showing of police misconduct. The trial court thus erred in excluding the State's proffered evidence.

The State also appealed initially from the order of the trial court excluding the testimony of witnesses concerning a prior burglary in Russell County in which defendant was charged and tried but found not guilty. The State in oral argument conceded that trial court discretionary rulings are not a proper subject for an interlocutory appeal by the State. We assume that, when the

issue is presented at the trial in this case, the trial court, on the basis of the evidence then before it, will reconsider the matter and exercise its discretion.

For the reasons set forth above, the judgment of the Court of Appeals dismissing the State's interlocutory appeal is reversed. The judgment of the district court is reversed and the case is remanded to the district court for trial or further proceedings.