(702 P.2d 328)

No. 57,680

No. 57,681

STATE OF KANSAS, *Appellant*, v. KAREN MOONEY, *Appellee*.

Petition for review denied September 27, 1985.

Opinion filed July 5, 1985.

*Phillip A. Burdick,* county attorney, and *Robert T. Stephan,* attorney general, for the appellant.

*John C. Humpage,* of Topeka, for the appellee.

Before FOTH, C.J., PARKS and MEYER, JJ.

PARKS, J.: This is an interlocutory appeal by the State, pursuant to K.S.A. 22-3603, from the order of the district court suppressing use of a statement made by the defendant Karen Mooney after her arrest.

On September 23, 1984, police officers of the city of Hiawatha received a radio dispatch that a complaint had been filed against the defendant for assault with a handgun. The officers were given a description of the van defendant was believed to be driving and were instructed to stop the van and arrest her. Shortly thereafter, Officer Tony Allen and Deputy Rob Hendricks stopped the van in front of a drive-in. Officer Cynthia Reynolds arrived on the scene moments later.

Officer Reynolds testified that when she pulled up in her

patrol car, Officer Allen was just getting out of his car. Officer Reynolds asked defendant, who stepped out of the passenger side of the van, to come back to her patrol car and place her hands on the hood. Officer Reynolds further testified that while she patted down defendant, she told defendant she was under arrest for assault and possibly aggravated assault. Without any questioning or prompting by Officer Reynolds, defendant, who was very upset and crying, stated, "I hit Dominic but I don't have a gun." Defendant was then taken to the law enforcement center where she was advised of her *Miranda* rights and given a waiver of rights form to sign. Defendant stood on her right to remain silent and made no further statements.

At the *Jackson v. Denno* hearing held to determine the admissibility of the statement made by defendant, Officer Allen disagreed with Officer Reynolds' recollection of events. He stated that he spoke with the defendant prior to her search and arrest by Reynolds and asked whether he could search the van for a gun. He said that defendant consented to the search and then stepped back to Reynolds' patrol car where she was searched and placed under arrest.

The trial judge ordered the statement given by defendant to be suppressed, ruling that it was not voluntarily made. The trial judge did *not* hold that the statement was elicited through interrogation but concluded that it was involuntary. The State appeals.

Defendant contends that this appeal is not within the scope of the court's jurisdiction over interlocutory appeals. K.S.A. 22-3603 clearly provides that the State may take an interlocutory appeal when the district court, prior to the commencement of trial, makes an order "quashing a warrant or a search warrant, suppressing evidence or *suppressing a confession or admission*." (Emphasis supplied.) Nevertheless, defendant contends that the State is additionally required to demonstrate a substantial impairment of its ability to prosecute the case before jurisdiction will lie. Defendant makes this argument relying on the recent decision in *State v. Newman*, 235 Kan. 29, 680 P.2d 257 (1984).

In *Newman,* the Court considered the scope of jurisdiction over orders "suppressing evidence." In an earlier Court of Appeals case, it was held that this language in K.S.A. 22-3603 only included suppression orders based on constitutional rulings so

that interlocutory appeals could not be taken from rulings suppressing evidence as a result of the application of the ordinary rules of evidence. *State v. Boling*, 5 Kan. App. 2d 371, 617 P.2d 102 (1980). In *Newman,* the Supreme Court rejected this distinction between constitutional and evidentiary suppression orders and held that K.S.A. 22-3603 was intended to permit interlocutory appeals of pretrial rulings which may be determinative of the case. The Court acknowledged that not all pretrial suppression orders should be appealable and, thus, held that the State is required to establish that the suppression order placed it in a position where its ability to prosecute the case would be substantially impaired before its appeal could be heard. *Newman,* 235 Kan. at 35. *Newman* determined that the jurisdictional basis for the appeal of a suppression order should be premised on its impact on the prosecution's case whereas Boling had adopted a distinction based on the rationale of the order excluding evidence. In sum, *Newman* broadened the scope of appellate jurisdiction by interpreting the statute as permitting appeal of some orders based on evidentiary exclusion rules while still limiting jurisdiction to rulings of significant impact.

However, both *Boling and Newman* were only concerned with determining the proper definition of the statutory phrase "suppressing evidence"; neither decision considered the appealability of an order "quashing a warrant or a search warrant" or "suppressing a confession or admission." The latter two types of suppression orders are specific and identifiable, while an order suppressing evidence is general and may include any number of rulings including the suppression of a confession or evidence seized with a warrant. Thus, while it was necessary to interpret the statutory intent behind the jurisdictional basis for the appeal of orders "suppressing evidence," no such interpretation of the other jurisdictional bases provided by K.S.A. 22-3603 has been made or is necessary. The holding in *Newman* has no bearing on this case.

In the statement suppressed by the trial court, defendant admitted being at the scene of the crime and striking one of the victims—an admission of simple battery. We conclude that when, as here, an order suppressing a confession or admission is entered by the district court, such ruling is appealable as a matter

of right under K.S.A. 22-3603. Therefore, defendant's claim that this court is without jurisdiction to hear the State's appeal under K.S.A. 22-3603 is without merit.

Turning now to the substantive issue raised by this appeal, we must decide whether the trial court's decision regarding the admissibility of defendant's statement is supported by substantial competent evidence. *State v. Andrews,* 218 Kan. 156, 160, 542 P.2d 325 (1975). We conclude that it is not.

A pretrial statement by an accused may be found to be involuntary if it is elicited either through coercion or trickery or is derived from a custodial interrogation without the benefit of the *Miranda* warnings and a knowing and intelligent waiver of the privilege against self-incrimination. *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602 (1966); *Andrews,* 218 Kan. at 160. Therefore, the trial court's conclusion that defendant's statement was involuntary would have to be upheld if there is evidence supporting the conclusion that any one of these three circumstances existed.

None of the evidence presented at the *Jackson v. Denno* hearing indicated that the procedure followed by the police prior to defendant's statement could be characterized as coercion or trickery. The van was stopped and defendant was asked to step outside. She was patted down and asked if a search of the van could be conducted. Defendant consented to the search and was placed under arrest as the officer advised her of the charges which would probably be filed against her. It is well established that volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by the *Miranda* holding. *Miranda,* 384 U.S. at 478; *State v. Jones,* 222 Kan. 56, 60, 563 P.2d 1021 (1977). Moreover, an accused's statement may be found to be voluntary and spontaneous and, thus, admissible even though it is made after the accused is arrested and in custody. *Rhode Island v. Innis,* 446 U.S. 291, 300-02, 64 L.Ed.2d 297, 100 S.Ct. 1682 (1980). *State v. Miles,* 213 Kan. 245, 246, 515 P.2d 742 (1973); *State v. Broadus,* 206 Kan. 766, 767-68, 481 P.2d 1006 (1971). Therefore, the fact of an arrest itself is not so coercive as to render a statement involuntary.

Furthermore, although defendant was certainly in custody when she uttered the incriminating statement, there is no evidence to suggest that the words or actions of either Officer

Reynolds or Officer Allen could be characterized as an "interrogation" prompting the statement. In *Innis*, the United States Supreme Court emphasized that it is the compulsive aspects of interrogation which the *Miranda* decision was intended to mitigate. *Innis*, 446 U.S. at 300. Thus, the Court provided the following discussion of the definition of an "interrogation".

"We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. at 300-02. See also *State v. Taylor*, 231 Kan. 171, 173, 642 P.2d 989 (1982).

Officer Reynolds testified that she ordered defendant to place her hands on the hood of her patrol car and then patted her down. Defendant said something to the effect that "you've got kids, you understand how I feel." The police officer did not reply to this remark or ask any questions but told defendant she was under arrest and the possible charges against her. Defendant then made her incriminating statement and Officer Reynolds advised her not to say anything else. In short, Officer Reynolds did not engage in any conduct which could be construed as evocative other than the necessary activity attendant to the arrest. Bearing in mind the *Innis* definition of interrogation, there was no evidence to support the notion that defendant was interrogated by Reynolds.

Officer Allen testified that when he approached the van and defendant stepped out, he asked her if he could search the van for the gun which had allegedly been used. She replied, "go right ahead" and then stepped back to Officer Reynolds' patrol car. While the request by Allen might be viewed as evocative, defendant did not respond by making an incriminating remark.

The statement suppressed by the court was not heard by Officer Allen and was only made after defendant had been advised she was under arrest. Since *Innis* indicates that it is the effect police words or actions have on the defendant which determines whether an interrogation has begun, defendant's noncommittal response to Allen indicates that she did not perceive the inquiry as an interrogation. In addition, our Supreme Court recently held that an arresting officer has the right to inquire as to the location of a weapon for the sake of his own protection. *State v. Roadenbaugh,* 234 Kan. 474, 477-80, 673 P.2d 1166 (1983). Such an inquiry was found not to violate the defendant's Fifth Amendment privilege against self-incrimination even though it was asked prior to *Miranda* warnings being given and when the suspect had already been taken into custody. The Court indicated that the importance of the arresting officer's personal safety prevents the characterization of the query "where's the gun," as an interrogation. *Roadenbaugh,* 234 Kan at 477.

In sum, although Officer Allen's request to search the van for a gun might well be expected to elicit a denial or some comment by the suspect, defendant did not make any such reply. Moreover, the nature of Allen's request is not the type of conduct which may be categorized as either an investigatory or a custodial interrogation. *Roadenbaugh,* 234 Kan. at 477. Officer Allen had reason to believe that a gun had been used in the alleged assault and would rightfully want to immediately secure its possession for both safety and evidentiary reasons.

We conclude that there was no evidence which would support the conclusion that defendant's statement was the product of trickery, coercion or a custodial interrogation. Indeed, all of the evidence indicates that defendant's statement was spontaneously volunteered. Therefore, we find that the trial court erred in ordering the suppression of defendant's statement. The State's appeal is sustained.

The judgment of the trial court is reversed and the case remanded for further proceedings.