NOT DESIGNATED FOR PUBLICATION

No. 114,574

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

LAKENDRICK K. SMITH,
*Appellee*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; MARK S. BRAUN, judge. Opinion filed June 3, 2016. Appeal dismissed.

*Jodi Litfin* and *Brett Watson*, assistant district attorneys, *Chadwick J. Taylor*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Ann Sagan*, of Third Judicial District Public Defender Office, for appellee.

Before HILL, P.J, STANDRIDGE and ATCHESON, JJ.

*Per Curiam*:  The State of Kansas appeals from the district court's order suppressing physical evidence seized from Lakendrick K. Smith's vehicle and statements he made to police officers after he was arrested for criminal threat and disorderly conduct. The State argues the evidence was properly seized based upon exigent circumstances, and the statements were properly obtained under the public safety exception to *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Smith disagrees with the State's justifications and further argues that the matters suppressed do not substantially impair the State's case and thus, the State's interlocutory

1

appeal from the order is improper. We agree with Smith and, therefore, dismiss this appeal based on a lack of jurisdiction.

FACTS

A dispute erupted in the early morning hours of September 12, 2014, at The Burger Stand in Topeka. Ultimately, Smith and another man were arrested. Without obtaining a warrant, police took Smith's car keys, opened his locked vehicle, and removed a handgun from the glove compartment. Several weeks later, Smith was charged in Shawnee County District Court with one count of felony criminal threat—communicating a threat to commit violence in a manner which placed Lonnie Hajnex in fear—and one count of misdemeanor disorderly conduct.

Smith waived his right to a preliminary hearing but filed a motion to suppress the gun seized from his locked vehicle and his postarrest statements that police would find a gun in the car. Smith argued that the search of his vehicle without a search warrant violated the Fourth Amendment to the United States Constitution and Section 15 of the Kansas Constitution Bill of Rights. More specifically, Smith claimed that no exception to the warrant requirement existed in this case, that he did not voluntarily consent to the search of his vehicle, and that there was no other legal basis for a warrantless search. Smith also argued that his statements to police were not voluntary.

An evidentiary hearing was held on the motion to suppress in August 2015. At the hearing, Sheriff's Deputy Douglas Fehr testified he was working a private security job at a Topeka apartment complex on September 12, 2014, and that he was wearing a Sheriff's Department t-shirt and was armed at the time. During his shift, Fehr received a call from Heather Hodges, a bartender who worked at The Burger Stand, a restaurant and bar located within the complex. Hodges reported to Fehr that there was an individual with a

2

gun inside the restaurant. When Fehr arrived at The Burger Stand, Hodges pointed out Smith as the person in question.

Deputy Fehr watched Smith for about 20 minutes but did not see any sign that Smith had a gun on his person. Nevertheless, a manager at the restaurant asked Fehr to remove Smith and his friend from the business because of complaints by other patrons. Fehr approached both men and told them they needed to leave the restaurant. Both men complied, and Fehr followed them outside. While on the sidewalk near the parking lot of the restaurant, Smith and Fehr talked casually for about 10-15 minutes about the applicable law governing the ability to conceal and carry a gun. During this conversation, Smith asked why he had been asked to leave the restaurant. Fehr explained that other patrons were uncomfortable because of things Smith had been saying and because someone believed Smith had a gun with him. Smith told Fehr he did not have a gun on his person but did have a conceal-carry permit that gave him the right to carry a gun. At some point during this conversation, Smith became agitated and asked his friend, who was standing by a vehicle, to retrieve his gun. After Smith made this request, Smith's friend moved toward the passenger side of the vehicle.

A restaurant employee standing outside overheard Smith ask his friend to get his gun and, as a result, went back inside the restaurant. Shortly thereafter, Topeka Police Officer Victor Riggin was dispatched to The Burger Stand based on a report that a man at the restaurant was talking about going and getting a gun. Riggin arrived within a few minutes and observed three men standing outside the restaurant. Two of the men matched the description given by the dispatcher, and Riggin recognized the third man as an off-duty sheriff's deputy. Riggin approached Smith and Smith's friend, Jericho Sholl, and patted down both men. Riggin asked Sholl to sit on the curb. Deputy Fehr then informed Riggin that Smith had asked Sholl to get his gun and that Sholl had approached a nearby Crown Victoria vehicle in response to the request. Within about 5 minutes of Officer

3

Riggin's arrival, Officer Sam Cartmill arrived at the scene as a backup officer. Several other officers arrived thereafter.

After speaking with a restaurant employee and another witness inside the bar, Officer Riggin found probable cause to believe Smith had committed the crime of criminal threat. Accordingly, Officer Cartmill handcuffed Smith and conducted a pat down of Smith's person. As Cartmill was securing Smith in the backseat of the police vehicle, Smith informed the officers that he had a conceal-carry permit and complained that the decision to handcuff and detain him was motivated by racism. Officer Cartmill did not give Smith *Miranda* warnings. After learning that Sholl also was involved in the incident, Cartmill arrested and handcuffed Sholl as well, placing him in the back of another patrol car. A third man was arrested for disorderly conduct because he was trying to take a video of the incident on his phone.

Meanwhile, Officer Riggin walked around Smith's vehicle several times. The vehicle was locked, and Riggin did not observe a gun in plain view. Nevertheless, Riggin was concerned because he believed that the gun was relevant to the criminal threat charge and that there was a public safety issue because the gun had not been located. Knowing that Smith had told Sholl to get Smith's gun and that Sholl had approached the car immediately thereafter, Officer Riggin approached Smith, who was still handcuffed and sitting in the back of a patrol car. Smith informed Riggin that he still did not know why he had been arrested, and Riggin responded that police dispatch had received a report that Smith had threatened people with a gun. Riggin noticed during this conversation that Smith smelled of alcohol, had bloodshot eyes, and slurred speech. Riggin also noticed Smith was wearing a lanyard around his neck with a key attached. Riggin ultimately removed the lanyard from Smith's neck based on a belief that the key would permit Riggin to unlock Smith's car and search it for the reported gun. It was at this point that Smith told Riggin he would find a gun in the glove compartment of the car. Riggin unlocked the car, checked the glove compartment, and seized a firearm he found there.

4

After the evidence set forth above was presented, the State requested permission to file supplemental pleadings on the issues raised in the suppression hearing. The district court continued the matter for supplemental briefing and for possible additional testimony. After the hearing, the State filed two pleadings. First, the State filed a motion to amend the criminal threat charge to reflect reckless intent on Smith's part as provided in K.S.A. 2015 Supp. 21-5415(a)(1), which is a severity level 9 felony. Second, the State filed a supplemental response to the motion to suppress asserting additional grounds in opposition to Smith's motion to suppress. Specifically, the State argued that Smith's statements to police were admissible under the public safety exception to the *Miranda* rule. As to the search of Smith's car, the State expanded its arguments to contend the search was proper based both on Smith's consent and exigent circumstances.

The suppression hearing reconvened on September 10, 2015. Rather than presenting any additional witnesses, defense counsel orally responded to the State's supplemental arguments. Defense counsel argued the State failed to prove that Smith consented to the search of his vehicle because there was no evidence that Smith gave an unequivocal, specific, and voluntary consent while he was handcuffed in the backseat of a police vehicle. Defense counsel also argued no exigent circumstances existed that would allow the police to search the vehicle because both the driver and passenger in the car had been handcuffed and arrested, the keys to the locked vehicle were in the possession of the police, and there was no gun in plain view. Finally, defense counsel challenged the constitutionally of the proposed amended charge of reckless criminal threat because the statute was unconstitutionally vague and overbroad.

A week later, the district court issued its ruling on the motion to suppress from the bench. First, the court found no evidence to establish that Smith consented to the search of his vehicle. On the issue of exigent circumstances, the court noted Smith and Sholl had been arrested for committing the crimes of disorderly conduct and criminal threat yet there was no allegation that those crimes actually involved a weapon. The court further

5

noted that Smith's vehicle was legally parked, both persons known to have access to the vehicle were arrested, and the State was in possession of a key to the locked car; thus, the risk of mobility normally presented when a vehicle is involved was not an issue. Next, the court rejected the State's argument that the public safety exception applied because the crimes allegedly committed did not involve the use of a weapon, and the persons known to have access to the vehicle were in custody. Accordingly, the court ordered the gun seized from the vehicle suppressed. With regard to the statements made by Smith after he was taken into custody, other than identity information, the court held they were made without *Miranda* warnings and therefore must be suppressed. Again, the court found the public safety exception did not apply. Finally, the court rejected Smith's constitutional challenge to the reckless criminal threat charge proposed in the State's amended information and granted the State's motion to amend the charges. This ruling was then journalized.

The State filed a timely notice of interlocutory appeal challenging the district court's suppression hearing.

ANALYSIS

We first consider Smith's claim that this court lacks jurisdiction over the appeal because the district court's order does not substantially impair the State's ability to prosecute him for disorderly conduct and reckless criminal threat. Whether jurisdiction exists is a question of law over which the appellate court has unlimited review. *State v. Looney*, 299 Kan. 903, 906, 327 P.3d 425 (2014). In the absence of jurisdiction, we have no legal basis to consider the merits of the State's argument for reversing the district court.

K.S.A. 2015 Supp. 22-3603 permits a prosecutor to take an appeal prior to trial from "an order . . . suppressing evidence or suppressing a confession or admission." While the statute does not expressly limit appeals from suppression orders, the Kansas appellate courts have long held that criminal interlocutory appeals could not be taken from "'every run-of-the-mill pretrial evidentiary ruling of the district court, especially in those situations where trial court discretion is involved.' [Citation omitted.]" *State v. Sales*, 290 Kan. 130, 134, 224 P.3d 546 (2010). Instead, the courts have limited appeals under K.S.A. 2015 Supp. 22-3603 to suppression orders where the ruling "substantially impair[s] the State's ability to prosecute the case." *State v. Newman*, 235 Kan. 29, 34, 680 P.2d 257 (1984).

The first step in determining whether the district court's suppression order substantially impairs the State's case is to review the charges at issue. Again, Smith was charged with reckless criminal threat and disorderly conduct. At the time of Smith's arrest, the criminal threat statute defined the crime as "any threat to:  (1) Commit violence communicated with intent to place another in fear, . . . or in reckless disregard of the risk of causing such fear . . . ." K.S.A. 2015 Supp. 21-5415(a)(1). The amended information specifically alleged that Smith "communicate[d] a threat to commit violence with reckless disregard of the risk of causing fear in another, to-wit:  Lonnie J. Hajnex and/or Heather Hodges . . . ." The State argued that the evidence it would present at trial would establish that Smith made statements to people in The Burger Stand stating that he had a conceal-carry permit, that he had a gun, and that he would shoot people in the restaurant.

With respect to the disorderly conduct charge, the statute defines the crime as committing "one or more of the following acts that the person knows or should know will alarm, anger or disturb others or provoke an assault or other breach of the peace:  . . . (3) using fighting words or engaging in noisy conduct tending reasonably to arouse alarm, anger or resentment in others." K.S.A. 2015 Supp. 21-6203. The amended information

7

alleged that Smith committed disorderly conduct by "use [of] offensive, obscene, or abusive language or engage in noisy conduct tending reasonably to arouse alarm, anger or resentment in others . . . ." It is not clear from the record whether the disorderly conduct charge also is based on Smith's actions inside the bar or whether it is based on conduct or statements made outside the restaurant.

As Smith contends, neither of the offenses with which Smith was charged requires the State to prove that he had actual access to a gun or that the threat to use a gun was imminent; thus, neither his statements about the gun's location nor the actual finding of the gun assists in proving the elements of the crimes charged. In fact, the district court itself appeared to struggle with the question of how the existence and/or location of the gun was relevant to the crimes charged.

The State, on the other hand, argues that the existence and location of the gun were highly relevant and that the court's decision to suppress this evidence substantially impaired the State's case. The State claims that Smith's state of mind is "critical" to the offenses charged in that the existence of the gun was corroborative evidence to support a finding of criminal threat. Although the State concedes it is not required to prove Smith had the ability to carry out the threat of shooting restaurant patrons, the State contends it still was obligated to prove Smith acted recklessly and that the "fact that he actually had a gun in the car helps [to] establish his state of mind when he made the threat."

The State relies on *State v. Bliss*, 28 Kan. App. 2d 591, 18 P.3d 979, *rev. denied* 271 Kan. 1038 (2001), to support its contention. In *Bliss*, the State took an interlocutory appeal from the district court's refusal to allow K.S.A. 60-455 evidence of other conduct between the defendant and a 14-year-old child the defendant was accused of molesting. The district court refused to permit the State to introduce the evidence at trial. On appeal, a panel of our court found the proffered evidence was relevant to establish the aggravated

indecent liberties charges; thus, the court had jurisdiction to review the interlocutory appeal. 28 Kan. App. 2d at 592, 594-95.

But the State in this case does not argue that the gun was relevant to proving the elements of the criminal threat offense. And the existence of the gun in a nearby car does not necessarily corroborate the witness' testimony that Smith made threats inside the bar. The State had several witnesses to testify about Smith's actions, and Smith himself corroborated the substance of his noncustodial discussions with Deputy Fehr. Similarly, the State fails to explain how the existence of an actual gun in Smith's car is relevant to Smith's state of mind. Since the 2010 recodification of the Kansas criminal code, a reckless act is one in which a person "consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." K.S.A. 2015 Supp. 21-5202(j), see PIK Crim. 4th 52.010 (2012 Supp.) The reckless criminal threat charge does not require any proof that Smith had the ability to carry out the threat; thus, it is possible for a jury or other factfinder to convict a defendant of criminal threat under the statute even if a subsequent investigation reveals no evidence of the ability to carry out the threat. See *State v. Cope*, 273 Kan. 642, 649, 44 P.3d 1224 (2002).

Such is the case here. The police affidavit was not introduced at the suppression hearing but is part of the record on appeal; thus, we may consider it for purposes of deciding the issue of jurisdiction. See *Mondragon v. Capital One Auto Finance*, 736 F.3d 880, 886 (9th Cir. 2013) (reviewing entire record to determine whether court had jurisdiction); *United States v. Monroe*, 353 F.3d 1346, 1357 n.14 (11th Cir. 2003) (same). According to the police affidavit, witnesses reported that Smith made advances to the bartender in the restaurant and when rebuffed, Smith began cursing at and arguing with other patrons. Smith told Hajnex that he had a gun and a conceal-carry permit; when Hajnex advised Smith he could not drink alcohol while carrying a gun, Smith reportedly

stated that he had a gun and he "'would not hesitate to shoot every [person] in this place.'" Both the bartender and Hajnex told police they were afraid Smith would use his gun inside the bar. In addition to the testimony about events inside the bar, the State had other evidence. The district court made it clear that it was not excluding Smith's statements to off-duty Deputy Fehr made outside the bar. Thus, Fehr could testify at trial about Smith's admissions that he had a concealed-carry permit. Fehr could also testify that Smith had told Sholl to get his gun and that Sholl moved toward the car in response to the request.

Based on all of the evidence the district court found to be admissible at trial, the State has failed to carry its burden to establish that the suppression of Smith's statements and discovery of the gun in the car substantially impaired its ability to prosecute Smith for reckless criminal threat and disorderly conduct. The alleged victim's testimony about Smith's statements that he had a concealed-carry permit and had a gun were corroborated in large part by Smith's voluntary statements to Deputy Fehr. Moreover, because the State was not obligated to prove Smith had the imminent ability to carry out his alleged threats, the gun and postarrest statements have minimal relevance to the charges being prosecuted.

Accordingly, we dismiss this appeal for lack of jurisdiction pursuant to K.S.A. 2015 Supp. 22-3603.

10