NOT DESIGNATED FOR PUBLICATION

No. 116,983

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

JARED A. GUY,
*Appellee*.

MEMORANDUM OPINION

Appeal from Clay District Court; JOHN F. BOSCH, judge. Opinion filed July 28, 2017. Appeal dismissed.

*Richard E. James*, county attorney, and *Derek Schmidt*, attorney general, for appellant.

*Blake A. Robinson*, of Manhattan, for appellee.

Before ARNOLD-BURGER, C.J., STANDRIDGE and SCHROEDER, JJ.

*Per Curiam*: When a judge, prior to trial, makes an order suppressing the State's evidence, an appeal may be taken by the prosecution from such order. K.S.A. 2016 Supp. 22-3603. Our Supreme Court has held that this "section is intended to permit appellate review of trial court rulings on pretrial motions *which may be determinative of the case*." *State v. Newman*, 235 Kan. 29, 35, 680 P.2d 257 (1984). The State must show that the pretrial order "substantially impairs the State's ability to prosecute the case." 235 Kan. at 35.

1

The State charged Jared A. Guy with aggravated indecent liberties with a child after S.M.S. reported that he stuck his hand down her pants during a country drive. Prior to trial, the district court excluded two pieces of evidence on the basis that it was unduly prejudicial: (1) testimony that Guy told Jake Moore he had been riding in the country with an underage girl, that she was "rubbing on" him, and that it made him feel like he "still had it"; and (2) testimony by people close to S.M.S., who noticed a change in her behavior toward Guy. The State filed this interlocutory appeal. Because we find that the court's ruling did not substantially impair the State's ability to proceed, we must dismiss the State's appeal for lack of jurisdiction.

FACTUAL AND PROCEDURAL HISTORY

In November 2015, Guy, S.M.S., and several others went for a ride in a four-door pickup. S.M.S. was 14 at the time. S.M.S.'s aunt was driving. S.M.S.'s grandmother was in the front passenger seat. S.M.S. sat in the center of the back seat, with her 5-year-old cousin on her lap. Lynn Gordon sat to the left of S.M.S., and Guy sat to her right. After running a couple errands, they drove around for 30 to 45 minutes. After their country drive, they returned to town and stopped in the parking lot of Ray's Apple Market. After leaving Ray's they ended the trip at her aunt's house.

As they drove around, S.M.S. consumed two to three wine coolers. The adults were also drinking. S.M.S. was feeling poorly, so while they were in the country she closed her eyes and rested her head on Guy's shoulder. When they were headed back into town, S.M.S. alleges that Guy put his hand in her pants and inserted his finger into her vagina. Guy removed his hand when they pulled up to Ray's.

Initially, S.M.S. did not tell anyone about what happened. But S.M.S.'s stepgrandfather noticed a change in S.M.S.'s behavior when she was around Guy. S.M.S. had known Guy her whole life, but she had been distancing herself from him. A couple of

2

weeks after the night in the truck, her stepgrandfather asked S.M.S. if something had happened. After telling the stepgrandfather, S.M.S. also told her aunt.

At some point in time, it is unclear when, Guy was drinking a beer with Jake Moore. Moore became concerned when Guy told him that "he'd been country cruising with somebody that was under age and he couldn't do anything with her because, you know, she was under age, but it still made him feel like he still had it." Guy also said that the girl was "rubbing on him." Moore asked Guy if the underage girl was S.M.S., but Guy "danced around the question." Moore thought the girl might be S.M.S. because Guy and S.M.S. were "always together." Moore told S.M.S.'s father what he had heard. Father asked S.M.S. about Guy. S.M.S. told her father that "she was with a few people and that she had been drinking and that something was going on between her and this fellow and then eventually he—his hand was down her pants." Father filed a police report the next day.

The State charged Guy with aggravated indecent liberties with a child. S.M.S., Jake Moore, and Father testified at the preliminary hearing.

After the preliminary hearing, Guy filed a motion in limine. The motion sought to exclude Moore's testimony, as well as testimony from "any individual but, specifically, the victim's guardian/Great Aunt . . . that relates to the victim's attitude or demeanor." Guy argued that the testimony should be excluded because it constitutes improper opinion evidence, it lacks probative value, and it is prejudicial. The State argued that the evidence was not opinion evidence. Moore's testimony "consists of a statement made directly to him by the Defendant." The guardian's testimony would consist of her perceptions. The State also argued that the evidence was relevant as it tended to confirm "S.M.S.'s version of the events."

After a motions hearing, the district court granted Guy's motion. The court prohibited any testimony from Moore and any "testimony of any individual that relates to the victim's attitude or demeanor, other than on the day of the alleged offense." The district judge held that such testimony would be so prejudicial that Guy would not receive a fair trial. The judge added that S.M.S. "should be capable of testifying and whether the jury believes her or not should be based on that and not on the conjecture or speculation it might generate from the statements of these other two individuals."

The State filed this interlocutory appeal of the court's order on the motion in limine.

ANALYSIS

The State filed this interlocutory appeal pursuant to K.S.A. 2016 Supp. 22-3603. This "section is intended to permit appellate review of trial court rulings on pretrial motions *which may be determinative of the case*." *Newman*, 235 Kan. at 35. However, "appellate courts of Kansas should not take jurisdiction of the prosecution's interlocutory appeal from every run-of-the-mill pretrial evidentiary ruling of a district court, especially in those situations where trial court discretion is involved." 235 Kan. at 35. The State must show that the pretrial order "substantially impairs the State's ability to prosecute the case." 235 Kan. at 35. "To determine whether a court's order causes substantial impairment, we look at how important the disputed evidence is to the [State's] ability to make out a prima facie, or legally sufficient, case." *State v. Dearman*, No. 110,798, 2014 WL 3397185, at *4 (Kan. App. 2014) (unpublished opinion). Whether we have jurisdiction based on this standard is a question of law which this court reviews de novo. *State v. Sales*, 290 Kan. 130, 134, 224 P.3d 546 (2010).

The State argues that the district court's suppression of evidence substantially impairs its case. The State relied on Moore's testimony to corroborate that Guy was

4

"riding around in the country" with an underage girl and that something sexual had happened. The State relied on the guardian, Father, and others to testify that S.M.S.'s demeanor toward Guy changed after the incident. It argues that the only evidence that the State has left to prove that a crime occurred is S.M.S.'s testimony.

Guy argues that "the State's prima facie case is easily made with testimony from the victim herself, any of the four other individuals present when the incident occurred, and the investigating officer." He correctly notes that the State could make a prima facie case with only the victim's testimony. See *State v. Brinklow*, 288 Kan. 39, 53-54, 200 P.3d 1225 (2009) (holding that the testimony of the victim alone was sufficient to sustain defendant's convictions for aggravated indecent liberties with a child). However, "[s]uppression rulings which seriously impede, although they do not technically foreclose, prosecution can be appealed under K.S.A. 22-3603." *State v. Huninghake*, 238 Kan. 155, 157, 708 P.2d 529 (1985). But Guy reminds us that in *Newman* our Supreme Court cautioned against "interlocutory appeals from every run-of-the-mill pretrial evidentiary ruling of a district court, especially in those situations where trial court discretion is involved." 235 Kan. at 35. He argues this is just such a case.

We recognize that this court has previously held that exclusion of corroborating evidence can substantially impair the State's case even where the State had clear testimony from the victim—thus providing this court with jurisdiction to consider an interlocutory appeal. See *State v. Bliss*, 28 Kan. App. 2d 591, 594, 18 P.3d 979 (2001) (evidence established an ongoing sexual relationship between the victim and Bliss and a continuing course of similar conduct of the defendant engaging in sex acts with young boys); *Dearman*, 2014 WL 3397185, at *6 (video interview 4-year-old victim's statements that sexual abuse was ongoing would bolster victim's credibility and may not be something she remembers at time of trial).

5

But unlike the victim in *Dearman*, the victim here is not a 4-year-old child who may forget the details at trial, but a 14-year-old girl who reported what happened to her to her stepgrandfather, her aunt, her father, and the police at different times. Unlike the victim in *Bliss*, this is not a case with substantial corroborating evidence of an ongoing sexual relationship between the victim and the defendant that would corroborate the victim's testimony regarding situations in which only the victim and the defendant were present. Clearly the evidence from Moore and the evidence of the change in the victim's behavior toward Guy after the country drive would have provided some evidence to support the State's theory, but we fail to see how the preliminary evidentiary decision to exclude Moore's testimony or any testimony about the victim's change in behavior *substantially* impairs the State's ability to make out a prima facie, or legally sufficient, case. Nor do we find its omission determinative of the State's ability to proceed. As noted by the Supreme Court in *Newman*, these were "run-of-the-mill pretrial evidentiary ruling[s]" involving trial court discretion. 235 Kan. at 35.

Finally, we pause to note that motions in limine, the vehicle used by Guy to bring these issues forward, are "used to invoke a trial judge's inherent power to control proceedings, to exclude inadmissible evidence, and to prevent undue prejudice." *State v. Smith*, 46 Kan. App. 2d 939, 943, 268 P.3d 1206 (2011). "A ruling on a motion in limine is temporary in nature and is subject to revision at trial in light of the evidence that is actually presented." 46 Kan. App. 2d at 943. Because the issues that are raised by a motion in limine can also be raised at trial and are subject to revision, prosecutors would be wise to carefully consider whether the ruling is clearly determinative of their cases. When the State files an interlocutory appeal that is not authorized by K.S.A. 22-3603, the time for the appeal must be charged to the State when computing whether an accused's right to a speedy trial under K.S.A. 22-3402(1) has been violated. *State v. Mitchell*, 285 Kan. 1070, Syl. ¶ 7, 179 P.3d 394 (2008).

In conclusion, because we find that the court's ruling did not substantially impair the State's ability to proceed, we must dismiss the State's appeal for lack of jurisdiction.

Appeal dismissed.