STATE OF KANSAS, *Appellant,* v. MANUEL RAMIREZ, *Appellee.*

No. 39,195

STATE OF KANSAS, *Appellant,* v. JOSEPH F. SPRINGER, *Appellee.*

No. 39,196

STATE OF KANSAS, *Appellant,* v. RALPH SCHLEIFER, *Appellee.*

No. 39,197

STATE OF KANSAS, *Appellant,* v. RALPH K. FRYE, *Appellee.*

No. 39,198

STATE OF KANSAS, *Appellant,* v. RANCE JONES and ROBERT R. OSBORNE, *Appellees.*

No. 39,199

STATE OF KANSAS, *Appellant,* v. WALTER C. MILLSTEAD, *Appellee.*

(263 P. 2d 239)

Opinion filed November 7, 1953.

*Donald E. Martin,* county attorney, argued the cause, and *Harold R. Fatzer,* attorney general, and *Paul A. Wilson,* assistant attorney general, and *Newell A. George,* assistant county attorney, and *Donald A. Hardy,* assistant county attorney, were with him on the briefs for the appellant.

*Blake A. Williamson,* of Kansas City, argued the cause and was on the briefs for appellees Manuel Ramirez and Ralph Schleifer.

*T. M. VanCleave, Jr.,* and *David W. Carson,* both of Kansas City, were on the briefs for appellee Joseph F. Springer.

*J. D. Lysaught* and *Arthur J. Stanley, Jr.,* both of Kansas City, were on the briefs for appellee Ralph K. Frye.

*James D. Howell* and *Wm. E. Scott,* both of Kansas City, were on the briefs for appellees Rance Jones, Robert R. Osborne and Walter C. Millstead.

The opinion of the court was delivered by

PARKER, J.: These cases were initiated by the filing in district court of indictments returned by a grand jury against the divers persons hereinabove named as appellees. The appeals, consolidated in this court for purposes of appellate review, are from orders of the district court of Wyandotte county, three judges sitting *en banc,* overruling the state's demurrers to the first count of separate pleas in abatement filed by such persons as defendants, asking that the action be abated and the indictments set aside for the reasons and on the grounds therein set forth. For informative purposes it should be noted at this point that the state's demurrers to the second count of such pleas in abatement were sustained and the rulings thereon are not now involved.

The parties concede that, except for differences in the nature of the offenses charged in the indictments, the pleadings and orders in all cases in question are substantially the same and the issues of law identical. Therefore, since pleadings and proceedings in the court below, prior to the filing of the pleas in abatement, have no bearing on the issues involved they will not be mentioned or discussed in this opinion which, so far as a factual statement is concerned, will be limited strictly to matters pertinent to a disposition of such issues.

The count of the pleas in abatement to which the demurrers were sustained is not abstracted and cannot be detailed. With respect to the count on which the demurrers were overruled it may be stated that after setting forth the name of the defendant involved, and the date on which the grand jury returned the indictment against him, each such count alleges that the indictment in question should not be sustained and that the action should be abated for the following reasons:

"1. The pretended grand jury which returned the said indictment had no legal authority to inquire into the alleged offenses charged in said indictment, in that no petition praying for a grand jury and signed by at least seven hundred (700) taxpayers of Wyandotte County was presented to the District Court of Wyandotte County at least forty (40) days before the commencement of the term of court at which a grand jury was desired by petitioners, as required by Sections 62-901 General Statutes of Kansas, 1949; and the District Court of Wyandotte County therefore had no power or authority to order

that a grand jury be drawn and summoned to attend at the March 1952 term of said court.

"The petitions which were filed in the office of the Clerk of the District Court of Wyandotte County on January 17, 1952, bore purported signatures of 1418 persons, represented to be taxpayers of Wyandotte County, whereas, in truth and in fact, 757 of the persons whose purported signatures appeared on the said petitions were not, at the time the said petitions were filed and presented, taxpayers of Wyandotte County. Of the remaining 661 signatures, 63 were signed 'Mr. and Mrs. _____'; and of the remaining 598 signatures, at least ninety-seven (97) were not the signatures of the persons whose names were purported to have been signed.

"757 persons corruptly and falsely represented themselves to this Court to be taxpayers of Wyandotte County and the person or persons who filed and presented the said petitions and whose names are not known to the defendant, corruptly filed and presented the said petitions when they knew that at least ninety-seven (97) of the pretended signatures appearing thereon were not the genuine signatures of the persons whose names they purported to be."

Following the overruling of the demurrers to the foregoing count of the pleas in abatement the state announced it reserved the question involved in that ruling. Thereafter the cause was continued and a notice of appeal, stating it appealed to this court from that part only of the order made by the district court in adjudging that its demurrer to ground No. 1 of the defendants' respective pleas in abatement be overruled, was given in each case.

At the outset appellees challenge the right of the state to be heard in this court and insist its appeal must be dismissed because no appeal lies from an order overruling a demurrer to a plea in abatement. This, of course, is a jurisdictional challenge and must be given consideration. In approaching this question it should be remembered that in this state appeals in criminal cases are governed by statute (*State v. Wallace*, 172 Kan. 734, 243 P. 2d 216), and that under our constitution (Art. 3, Sec. 3) and repeated decisions (See *State v. McCombs*, 164 Kan. 334, 337, 188 P. 2d 922, and cases cited) matters are only appealable when authorized by its terms.

Resort to our code of criminal procedure reveals two statutory provisions conferring the right of appeal in criminal cases. It is interesting to note that such provisions have remained unchanged in our statute since 1868.

The first of these is G. S. 1949, 62-1701, granting a defendant the right of appellate review. It reads:

"An appeal to the supreme court may be taken by the defendant as a matter of right from any judgment against him; and upon the appeal any decision of the court or intermediate order made in the progress of the case may be reviewed."

The second is G. S. 1949, 62-1703. It prescribes the conditions, circumstances and grounds on which the state may take an appeal and provides:

"Appeals to the supreme court may be taken by the state in the following cases, and no other: *First,* upon a judgment for the defendant on quashing or setting aside an indictment or information; *second,* upon an order of the court arresting the judgment; *third,* upon a question reserved by the state."

Merely to read the section of the statute last above quoted makes it obvious the first two subdivisions thereof have no application and that the state's right of appellate review, under the facts of this case, must stand or fall upon whether the third subdivision grants it the right of appeal from an intermediate order such as is here involved. The appellees insist the phrase "upon a question reserved by the state" has reference to orders or judgments that are final in nature, not to interlocutory rulings or orders. On the other hand the state contends that such phrase is to be construed as comprehending and including all orders made in the trial of a criminal case, regardless whether they be intermediate or final. This we may add, is its position notwithstanding we have held (See, *e. g., Cummings v. State,* 4 Kan. 192; *State v. Coffelt,* 66 Kan. 750, 71 Pac. 588; *State v. Wallace,* supra) that in criminal cases brought to the supreme court by appeal intermediate orders made in the progress of a trial can be reviewed only after judgment and gone so far as to hold (See *State v. Levine,* 125 Kan. 360, 264 Pac. 38; *State v. Brown,* 144 Kan. 573, 61 P. 2d 901) that in such actions no appeal lies from an order sustaining a demurrer to a plea in abatement until after trial and final judgment has been rendered. It must be conceded all of the cases to which we have just referred involve appeals by a defendant, not by the state. Nevertheless, they are entitled to consideration in construing the force and effect to be given the phrase "upon a question reserved by the state" as used in 62-1703, *supra,* especially when it is remembered that under its first subdivision the legislature made specific reference to the type of rulings on pleadings from which the state might have the right of appeal, namely, a judgment quashing or setting aside an indictment or information.

In support of their position the appeal should be dismissed appellees rely on two Kansas decisions and several from foreign jurisdictions. These have been considered and will be reviewed briefly.

The early case of *Junction City v. Keeffe,* 40 Kan. 275, 279, 19 Pac. 735, was an appeal by the state from an order sustaining a

motion to quash a warrant. The later case of *The State v. Rook*, 61 Kan. 382, 59 Pac. 653, involved an appeal from an order quashing an information. Both cases were treated as appeals falling directly within the first subdivision of 62-1703, *supra*, and for that reason are of little value as precedents. However, at page 385 of the opinion in the Rook case the following statement, on which appellees place great weight, appears:

"In *Junction City v. Keeffe*, supra, a very general statement of the meaning of the phrase 'question reserved by the state' was made. It was there remarked; 'We believe the phrase "question reserved by the state" is any exception embodied in a bill of exceptions where a defendant has been discharged for any cause except upon a trial on the merits, and the two exceptions named, *supra*.' The exceptions referred to are judgments for defendants quashing indictments or informations and orders arresting the judgment. . . ."

The foregoing quotation was doubtless the rule as it existed at the time the decisions in questions were rendered. The trouble is, as we will presently point out, the rule has been expanded and is no longer limited to cases where a defendant has been discharged.

*People v. Vitale*, 364 Ill. 589, 5 N. E. 2d 474, involved the overruling of a demurrer to a plea in bar. To that extent it is similar to the case here. However, it is true the opinion states "It was not intended by the General Assembly to grant a general right of review to the People from every unfavorable judgment in a criminal case." That, however, is as far as the case goes and it is of little value because the decision the state had no right of appeal was based on the premise the statute there in force and effect limited the state's right to cases where a court had quashed or set aside an indictment.

In *Ex parte Carillo*, 22 N. M. 149, 158 Pac. 800, the district court had sustained a plea in abatement to an indictment and the state appealed from that ruling. The appellate court held there was no appeal from a ruling of that nature because the statute limited appeals by the state to cases where an indictment was quashed or judged insufficient on demurrer, or the judgment arrested. This case is not in point because the New Mexico statute did not authorize an appeal from "questions reserved by the state" as ours does, hence we have no way of telling what the appellate court of that state would have held had it done so.

In *State v. Minnick*, 33 Oreg. 158, 54 Pac. 223, the defendant interposed a plea of former acquittal. The state demurred to the plea, the demurrer was overruled, a trial was had and at the close thereof the court instructed the jury to return a verdict of not guilty and dis-

charge the defendant. The state appealed and the defendant moved to dismiss the appeal on the same ground as is here relied upon. In disposing of the case the court said the Oregon statute authorized appeals by the state only (1) upon a judgment for the defendant on a demurrer to the indictment and (2) an order of the court arresting the judgment, and that since the state's appeal did not fall within either of the two grounds of error for which the right of the appeal was accorded by statute, and, these being exclusive, the state could assign no others. This case like the one last above mentioned is not conclusive because our statute goes further and authorizes appeals on questions reserved by the state.

The final case cited by appellees, and one on which they place much weight, is *State v. Weathers,* 13 Okla. Criminal, 92, 162 Pac. 239. There, after a conviction, the trial court had granted the defendant's motion for a new trial. The state appealed under a statute containing language identical with that of our own. In disposing of the case by dismissing the appeal on defendant's motion the court held:

"The right of the state to appeal from any order or judgment of a trial court rests upon statutory authority, which authority cannot be enlarged by construction.

"In this jurisdiction the state has no right to appeal from an order of the trial court granting a new trial to a person who has been convicted of crime." (Syl. ¶¶ 1 and 2.)

And in the opinion said:

"The state does not contend that it has any standing in this court upon paragraphs one and two, but relies upon the general provision of paragraph 3. This provision authorizes an appeal by the state upon a question reserved by the state at the trial of a criminal case. Without doubt this paragraph contemplates an appeal only upon the final disposition of the cause. In many jurisdictions the state has no right of appeal at all, and its right to appeal, where the right is granted, is based upon specific statutes, which statutes are not to be enlarged by construction. . . ." (pp. 94 and 95.)

On first blush this case would seem to be on all fours with the instant appeal. Certainly the reasoning of the court has application. The trouble is the result is directly contrary to what we have held. In a number of our more recent cases (*State v. Sharpe,* 172 Kan. 520, 241 P. 2d 501; *State v. Clark,* 171 Kan. 734, 237 P. 2d 255; *State v. Miller,* 154 Kan. 267, 118 P. 2d 561; *State v. Mitchell,* 143 Kan. 322, 54 P. 2d 917) we have held that under the third subdivision of our statute (62-1703, *supra*) the state may appeal from an order granting the defendant a new trial and in others (*The*

*State v. Allen,* 107 Kan. 407, 191 Pac. 476, involving the correctness of an instruction and rulings on evidence introduced by the defendant; *State v. Butler,* 131 Kan. 680, 293 Pac. 756, involving adverse rulings made in the course of selection of a jury, and *State v. Marek,* 129 Kan. 830, 284 Pac. 424, involving restriction of the state's number of challenges) we have held the language used in such subdivision gives the state the right to appeal from the rulings mentioned where a jury fails to agree on a verdict or there is a mistrial.

As authority for its claim the language to be found in the third subdivision of 62-1703, *supra,* gives it the right to appeal from the involved intermediate order upon the procuring of a continuance, in fact—as we have seen—to appeal from an order overruling its demurrer to one count of a plea in abatement where its demurrer as to the other count has been sustained and it has not tried out and hence does not know what the ruling of the trial court will be on the count of the plea to which its demurrer has been overruled, the state relies upon three Kansas cases to which we have given careful attention.

The first of these cases is *State v. Allen,* supra, a case where the state reserved questions pertaining to rulings of the trial court on evidence offered by the defendant at the trial, also the giving of an alleged erroneous instruction and, after there had been a trial at which the jury disagreed, took an appeal under the third subdivision of 62-1703, *supra.* This case is of little value as a precedent for all it holds is, as we have previously indicated we agree, that an appeal may be taken after a jury has disagreed and after the cause has been continued to another term of court for trial.

The second case cited by the state is *The State, ex rel., v. Grove,* 109 Kan. 619, 201 Pac. 82. This was an original proceeding in quo warranto, a civil action, in which the state was seeking to determine the legal capacity of the defendant to hold office as a member of the board of commissioners of the City of Wichita. No criminal appeal was involved and the construction to be placed upon the third subdivision of 62-1703, *supra,* was not even remotely in question. On this account the case is not in point and of no value as a precedent.

The third and final case relied on by the state is *State v. Butler,* 131 Kan. 680, 293 Pac. 756. In this case the state appealed from adverse rulings made by the court on the selection of a jury in a

felony case. A concise statement of how the appeal reached this court appears at page 680 of the opinion and reads:

"Defendant disclosed that he has been convicted of felony twice before, and made two contentions based on chapter 191 of the Laws of 1927: first, that in ascertaining whether a prospective juror believed the punishment to be severe, it was necessary to inform the juror the punishment would be imprisonment in the penitentiary for life; and second, that defendant was entitled to twelve peremptory challenges, because if convicted he would be sentenced to imprisonment in the penitentiary for life. The district court sustained these contentions, the state reserved both questions, the jurors called for examination were excused, and the case was continued to give the state opportunity to appeal. . . ." (pp. 680 and 681.)

This court, after holding that questions pertaining to the habitual criminal act had nothing to do with trial procedure and the statute did not become operative until after judgment, rendered judgment for the state on both questions reviewed and sent the case back with directions to proceed in accord with the views expressed in the opinion. This is the only case cited by the state which comes even close to sustaining its position in the instant appeal. However, resort to the opinion discloses no request, as here, to dismiss the appeal because not authorized by statute; no discussion of the state's right or the trial court's right to stop proceedings before trial after intermediate rulings for the purpose of appeal before completion of a trial; and no reference or discussion whatsoever of the construction to be placed upon the third subdivision of 62-1703, *supra*. Under such circumstances we are not inclined to give this decision weight as a precedent and decline to do so.

Having failed to find any decision in those cited by either of the parties which we regard as decisive of their respective positions on the question now under consideration this court, after resorting to West's Kansas Digest, Hatcher's Kansas Digest, and Shepard's Kansas Citations, was able to find more than two score Kansas cases dealing with the state's right to appeal under the provisions of 62-1703, *supra,* since its enactment in 1868. Those cases have been read and carefully reviewed. As a result of our research it may be said that except for *State v. Butler,* supra, which as has already been indicated is not to be regarded as a sound precedent, we have been unable to find any case sustaining the state's position that an appeal from a ruling such as has been taken in the instant case is authorized or contemplated by the phrase "Upon a question reserved by the state," as used in 62-1703, *supra.* In fact, it should be

added that our research, save for the decision last above mentioned, discloses no case where the state has ever attempted to maintain such an appeal under the authority of the third subdivision of this section of our statute.

In view of what has been heretofore stated and when it is kept in mind (1) that matters are only appealable to this court when authorized by statute; (2) that the right to appeal in criminal cases rests upon statutory authority which cannot be enlarged by construction; (3) that the legislature in subdivision (1) of G. S. 1949, 62-1703, put its finger upon the rulings on pleadings in criminal cases from which an appeal could be taken; (4) that in line with our repeated decisions and in accord with the maxim *expressio unius est exclusio alterius* the statute having prescribed the conditions upon which appeals from rulings on pleadings might lie, is to be construed as excluding appeals upon rulings on pleadings not specified; (5) that the state instead of attempting to appeal from the order overruling its demurrer to one count of the plea in abatement could have waited until the trial court had an opportunity to pass upon the pleas in abatement and then, in the event of an adverse ruling resulting in an order setting aside the indictments, would have an absolute right to appeal on the very ground set forth in the first subdivision of 62-1703, *supra;* (6) that if the state's position it can appeal from any intermediate orders, such as are here involved, is sustained, (*a*) it will have greater rights on appeal than defendants are afforded in criminal actions and (*b*) a defendant may often be deprived of the right to a speedy trial as guaranteed by section 10 of the Bill of Rights of the Constitution of Kansas by reason of attempted appeals on interlocutory rulings; we have little difficulty in concluding that the phrase "a question reserved by the state," as used in the third subdivision of 62-1703, *supra,* does not contemplate or comprehend appeals from intermediate rulings prior to the trial of a case and should and is to be construed as limited and restricted to questions reserved by the state during the trial of a criminal action.

Construed as above indicated the statute gives the state no right of appeal from the orders overruling its demurrers to the first count of the pleas in abatement and its attempted appeal from those rulings gives this court no power or jurisdiction to review them. The result is the appellees' position the appeals should be dismissed must be upheld and it is so ordered.

In conclusion we feel constrained to state we are not impressed

by a final contention advanced by the state to the effect that in the event of a dismissal of the appeal, or should the ruling of the district court of Wyandotte county be affirmed, the administration of justice within that judicial district would be hampered and practically nullified. In *In re Frye,* 173 Kan. 392, 395, 246 P. 2d 313, we pointed out that it seems clear the legislature deemed generally that after the passage of Chapter 82, Laws of 1868 (now chapter 62, article 8, G. S. 1949), prosecutions should be by means of information, which do not require the services of a grand jury. If the state feels that procedure by indictment is too cumbersome and unwieldy to permit the speedy determination of criminal actions such chapter and other sections of our statute contain ample provisions for speedy and prompt administration of justice by the institution and prosecution of criminal actions by prosecuting officials of the county without the necessity of calling a grand jury. Indeed, if under the existing conditions and circumstances there is factual merit in this contention, there is nothing at this time to keep such officials from having a speedy trial by causing a complaint to be filed before a proper magistrate charging the appellees with the offenses charged in the instant indictments.

The appeals are dismissed.