IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 112,019

STATE OF KANSAS,
*Appellant*,

v.

JACK R. LaPOINTE,
*Appellee*.


SYLLABUS BY THE COURT


1.

The right to appeal is entirely statutory, and the limits of appellate jurisdiction are imposed by the legislature.


2.

The determination of whether the Court of Appeals had jurisdiction over an appeal rests on the interpretation of statutes and involves a question of law over which the Kansas Supreme Court, upon review of a Court of Appeals decision, exercises unlimited review.


3.

The district court must have entered a final judgment before the prosecution may bring a question-reserved appeal under K.S.A. 2015 Supp. 22-3602(b)(3).


1

4.

Question-reserved appeals under K.S.A. 2015 Supp. 22-3602(b)(3) may proceed only where they seek a ruling on questions of statewide interest that are important to the correct and uniform administration of the criminal law and the interpretation of statutes.

5.

An order granting postconviction DNA testing under K.S.A. 2015 Supp. 21-2512 occurs at the midpoint in the proceedings required by the statute and is not a final judgment from which the State may appeal on a question reserved under K.S.A. 2015 Supp. 22-3602(b)(3).

6.

A State's question-reserved appeal from an interim order allowing postconviction DNA testing may not be treated as a premature appeal that may lie dormant until a final judgment is entered.

7.

An order allowing postconviction DNA testing cannot be considered final for purposes of a question-reserved appeal simply because a judgment of conviction and sentence has been entered in the underlying criminal case.

8.

Under the circumstances of this case, the State, having invoked the appellate courts' jurisdiction over a question reserved in a criminal case, as provided for in K.S.A. 2015 Supp. 22-3602(b)(3), cannot expand its elected, and repeatedly asserted, statutory basis for jurisdiction.

Review of the judgment of the Court of Appeals in 51 Kan. App. 2d 742, 355 P.3d 694 (2015). Appeal from Johnson District Court; KEVIN P. MORIARTY, judge. Opinion filed March 3, 2017. Judgment of the Court of Appeals dismissing the appeal is affirmed. Appeal dismissed.

*Steven J. Obermeier*, assistant district attorney, argued the cause, and *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, were with him on the briefs for appellant.

*Richard Ney*, of Ney & Adams, of Wichita, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

LUCKERT, J.: In this appeal, we are presented with a novel question: May the State use K.S.A. 2015 Supp. 22-3602(b)(3), which allows the prosecution to take a criminal appeal "upon a question reserved," after a district court grants postconviction DNA testing under K.S.A. 2015 Supp. 21-2512 but before the testing is conducted and thus before any posttesting court proceedings have been completed? The Court of Appeals concluded the State could not bring such a "question reserved" appeal because there had been no final order in the case. Specifically, at the time the State tried to bring its appeal the district court had only entered an order granting DNA testing—which, under the testing statute, was merely a midpoint in the statutory proceedings. The Court of Appeals further concluded the State's inability to meet the requirements for a question-reserved appeal meant the Court of Appeals lacked jurisdiction. See *State v. LaPointe*, 51 Kan. App. 2d 742, 355 P.3d 694 (2015).

On petition for review, the State asks us to reverse the Court of Appeals and determine that it may take an appeal from an order granting postconviction DNA testing. But the State fails to persuade us that a final order had been entered, and we hold that the

3

Court of Appeals lacked jurisdiction over the State's appeal in this case and that the appeal was properly dismissed.

FACTS AND PROCEDURAL HISTORY

The question before us rests on the procedural history of the case, not the underlying facts of the crime. For our purposes, it is enough to know that a jury convicted LaPointe of aggravated robbery and aggravated assault. LaPointe's criminal history scored as a category A on the Kansas sentencing guidelines grid, and the district court sentenced him to a total of 245 months' imprisonment to run consecutive to sentences imposed in other state and federal cases. On direct appeal, the Court of Appeals affirmed LaPointe's convictions and sentences. *State v. LaPointe*, No. 93,709, 2006 WL 2936496 (Kan. App. 2006) (unpublished opinion), *rev. denied* 283 Kan. 932 (2007).

Approximately 7 years later, LaPointe filed, in his underlying criminal case, a request for postconviction DNA testing pursuant to K.S.A. 2015 Supp. 21-2512(a). LaPointe acknowledged that the statute was written to apply only to criminal defendants convicted of first-degree murder or rape and that he had not been convicted of those crimes. He argued, however, that the statute should be extended to cover him because his controlling term of 245 months' imprisonment (more than 20 years) equaled or exceeded the terms for first-degree murder or rape and therefore caused him to be similarly situated to someone who had been convicted of those crimes. Citing *State v. Cheeks*, 298 Kan. 1, 6-14, 310 P.3d 346 (2013), LaPointe argued there was no rational basis to treat his offenses and resulting sentences differently from first-degree murder or rape and, as a result, the postconviction DNA testing statute violated the Equal Protection Clause of the United States Constitution.

4

The district court agreed, over the State's objections. The State then appealed from the district court's order, and in its notice of appeal stated: "This appeal is taken to the Court of Appeals of the State of Kansas upon a question reserved pursuant to K.S.A. 22-3602(b)(3), K.S.A. 60-2101(a) and K.S.A. 60-2102(a)(2)." Through the question-reserved appeal, the State argued the district court erred in extending the postconviction DNA testing statute to a defendant sentenced to a term of imprisonment equal to or longer than the mandatory or presumptive sentences for first-degree murder or rape.

The Court of Appeals did not reach that question, however. Instead, the Court of Appeals focused on LaPointe's argument that the court lacked jurisdiction over the appeal. The Court of Appeals agreed, noting that a question-reserved appeal may only be taken from a final judgment and there had been no final judgment when the State appealed. *LaPointe*, 51 Kan. App. 2d at 743.

The State then filed a petition seeking our review of the Court of Appeals' determination that it lacked jurisdiction. We granted the State's petition and obtained jurisdiction through K.S.A. 60-2101(b) (jurisdiction to review judgments of the Court of Appeals) and K.S.A. 20-3018(b) (petition for review procedures). This does not mean, however, that we have jurisdiction over the question reserved—*i.e.*, the merits of the State's arguments on appeal; when this court grants a petition for review in a criminal case it limits the issues considered to those that (1) were properly before the Court of Appeals and (2) were specifically raised in the petition for review or the cross-petition as having been decided erroneously by the Court of Appeals. See Supreme Court Rule 8.03(h)(1) (2017 Kan. S. Ct. R. 53). Thus, we will not resolve the equal protection question at the heart of LaPointe's request for DNA testing. If we agree that the Court of Appeals lacked jurisdiction over the State's appeal, then the equal protection question was not properly before the Court of Appeals and is similarly not properly before us. And

5

even if we were to conclude the Court of Appeals erred by declining to decide the equal protection question, that court still did not reach the issue and thus our recourse would be to remand for further consideration. Either way, we decline to decide whether petitioners like LaPointe should receive the benefits of the postconviction DNA testing statute. We will instead focus on the issue of jurisdiction.

ANALYSIS

Beginning in the Court of Appeals, LaPointe has argued and continues to argue there is no statutory authority for the State of Kansas to take an interlocutory appeal from a district court order granting postconviction DNA testing under K.S.A. 2015 Supp. 21-2512(a). As LaPointe correctly observes, "the right to appeal is entirely statutory," and "the limits of appellate jurisdiction are imposed by the legislature." *State v. Berreth*, 294 Kan. 98, 110, 273 P.3d 752 (2012); see *Harsch v. Miller*, 288 Kan. 280, 287, 200 P.3d 467 (2009) ("Kansas appellate courts may exercise jurisdiction only under circumstances allowed by statute . . . ."). As such, the determination of whether the Court of Appeals had jurisdiction over an appeal rests on the interpretation of statutes and involves a question of law "over which we exercise unlimited review." *Berreth*, 294 Kan. at 109.

K.S.A. 60-2101 provides the starting point for defining the jurisdiction of Kansas appellate courts in both civil and criminal cases. Because LaPointe filed his request for postconviction DNA testing within his criminal case, the Court of Appeals focused on jurisdiction over criminal appeals. *LaPointe*, 51 Kan. App. 2d at 744, 746-77. As to criminal appeals, K.S.A. 60-2101(a) provides: "Appeals from the district court to the court of appeals in criminal cases shall be subject to the provisions of K.S.A. 22-3601 and 22-3602."

The State's notice of appeal cited the second of these statutes—22-3602—and more specifically, subsection (b)(3) of that statute. Subsection (b) lists four categories of cases in which the prosecution may take an appeal "as a matter of right" and indicates the right is limited to the listed types "and no others." The third category, the one specifically referenced by the State in its notice of appeal and in its briefs, allows the State to appeal "a question reserved by the prosecution."

The State's notice of appeal also cited to 2015 Supp. K.S.A. 60-2102(a)(2), which allows a party to bring an appeal in the Court of Appeals "as a matter of right" when the party appeals "[a]n order that grants, continues, modifies, refuses or dissolves an injunction, or an order that grants or refuses relief in the form of mandamus, quo warranto or habeas corpus." The Court of Appeals noted, however, that this citation followed the State's explicit reference to an appeal on a question reserved and that the State's brief limited the discussion to a question reserved; it, therefore, considered the appeal in that context only. See *LaPointe*, 51 Kan. App. 2d at 749-50. Before us, although the State argues for application of some principles borrowed from civil procedure, it phrases its objection to the Court of Appeals ruling as being that the "Court of Appeals erred in declining to answer the question reserved." Thus, it continues to rely on the third circumstance listed in K.S.A. 2015 Supp. 22-3602(b)—an appeal on a question reserved—as the jurisdictional basis for this appeal.

Focusing on that jurisdictional basis, the State's arguments require us to interpret the statutory provision allowing question-reserved appeals, which has a long history in Kansas. See, *e.g.*, *The State of Kansas v. Carmichael*, 3 Kan. 102 (1865). Despite the statute's longevity, it tends to be used sparingly and so the trappings of these appeals have

7

been rather slowly developed. See *State v. Glaze*, 200 Kan. 324, 325, 436 P.2d 377 (1968). But we nonetheless have the benefit of at least two clear standards.

First, "[i]nherent in appeals as a matter of right by the prosecution," including in question-reserved appeals, "is the element that the trial court has entered a final judgment in the case." *State v. Puckett*, 227 Kan. 911, 912, 610 P.2d 637 (1980); see *State v. Grimes*, 229 Kan. 143, 147, 622 P.2d 143 (1981) ("[Q]uestions reserved . . . may be appealed only when the case has been terminated."); see also *State v. Ramirez*, 175 Kan. 301, 304, 263 P.2d 239 (1953) (expressing skepticism about the State's argument that the phrase "question reserved by the state" should be "construed as comprehending and including all orders made in the trial of a criminal case, regardless whether they be intermediate or final").

Requiring a final judgment fits with the purpose of a question-reserved appeal, which is to resolve important questions going forward even though resolution will not impact the defendant in the present case. *Puckett*, 227 Kan. at 912 ("Questions reserved presuppose that the case at hand has concluded, but that an answer is necessary for proper disposition of future cases which may arise."); see *State v. Barlow*, 303 Kan. 804, 811, 368 P.3d 331 (2016) (explaining that question-reserved appeals "allow[] the State to obtain an appellate ruling on a particular point of law . . . without attacking or affecting the defendant's acquittal"); *Berreth*, 294 Kan. at 123-24 (noting that "an appellate court's answer to a State's question reserved has no effect on the criminal defendant in the underlying case" and analogizing a question reserved to "a purely academic question in the case in which it arrives on appeal").

Second, this court has more recently focused on a different aspect of question-reserved appeals: They may proceed only where they seek a ruling on "questions of statewide interest important to the correct and uniform administration of the criminal law and the interpretation of statutes. [Citations omitted.]" *State v. Leonard*, 248 Kan. 427, 432, 807 P.2d 81 (1991); see *Berreth*, 294 Kan. at 102-03, 110-11; see also *Barlow*, 303 Kan. at 811. For example, legal questions that "relate peculiarly to the particular facts shown in the evidence" would be of limited precedential value and probably not appropriate for a question-reserved appeal. See *Glaze*, 200 Kan. at 325-26; see also *State v. Mountjoy*, 257 Kan. 163, 168, 891 P.2d 376 (1995); *State v. Kopf*, 211 Kan. 848, 848-49, 508 P.2d 847 (1973). "Reserved questions will not be entertained merely to demonstrate whether or not error has been committed by the trial court in its rulings adverse to the state." *Glaze*, 200 Kan. at 325; see also *State v. Chittenden*, 212 Kan. 178, 179, 510 P.2d 152 (1973) ("The purpose of allowing appeal on questions reserved by the state is not to point out error in criminal trials, but to give the bench, bar, and public the benefit of this court's opinion on questions of statewide interest, usually the interpretation of statutes.").

Here, the State explains that it does not seek to impact LaPointe's case and instead only seeks "clarification concerning other criminal defendants who are neither convicted of murder nor rape but who are serving lengthy sentences based on their extensive criminal history." It contends it may appeal the district court's order granting testing upon a question reserved and acknowledges that the primary stumbling block for its attempted appeal is not whether there is an issue of statewide interest, but, rather, whether there has been a final judgment. See, *e.g.*, *Puckett*, 227 Kan. at 912.

9

The State offers four explanations as to why there was a final judgment in LaPointe's case or why the Court of Appeals could have found an alternative basis for jurisdiction: (1) The district court's order allowing testing constituted a final judgment; (2) proceedings in district court that occurred subsequent to the State filing its appeal but before the Court of Appeals decision made the judgment final; (3) final judgment had been entered upon conviction and sentence, which sufficed for the purposes of its present appeal; and (4) certain civil jurisdiction principles should be applied in question-reserved appeals and under those principles the appellate courts have jurisdiction. We reject each of these arguments.

1. *The district court's order granting DNA testing is not a final judgment because it is only a midpoint in the postconviction DNA testing proceedings.*

The State first contends that the district court's order granting testing was, itself, a final judgment in the case which permitted the State to appeal upon a question reserved. We disagree, as K.S.A. 2015 Supp. 21-2512 indicates that an order granting testing is a mere midpoint in the proceedings.

Under K.S.A. 2015 Supp. 21-2512, "after the test results are obtained" the district court "has to determine whether the test results are unfavorable to the petitioner, favorable to the petitioner, or inconclusive," and must then take additional appropriate action. *State v. Hernandez*, 303 Kan. 609, 620, 366 P.3d 200 (2016); see generally *State v. Rodriguez*, 302 Kan. 85, 94, 350 P.3d 1083 (2015) ("[21-2512(f)] sets out 'specific and distinct' procedures a trial court must follow . . . ."); *Haddock v. State*, 295 Kan. 738, 755-56, 286 P.3d 837 (2012) (describing what the district court "must" and "is required" to do depending on the test results); *Goldsmith v. State*, 292 Kan. 398, 402, 255 P.3d 14 (2011) (same); *Haddock v. State*, 282 Kan. 475, 495-99, 146 P.3d 187 (2006) (describing the statute as providing for "certain mandatory dispositions" and also, in the case of

10

inconclusive results, court discretion). This finding about the test results constitutes the first step a district court must take *after* entering the order allowing testing.

The district court must then take some additional action, the nature of which largely depends on whether the court found the DNA test results to be unfavorable to the petitioner, favorable, or inconclusive. If unfavorable, the court "shall" dismiss the petition. K.S.A. 2015 Supp. 21-2512(f)(1)(A). If the DNA test results are favorable and the results "are of such materiality that a reasonable probability exists that the new evidence would result in a different outcome at a trial or sentencing," the court "shall" order a hearing and "enter any order that serves the interests of justice." K.S.A. 2015 Supp. 21-2512(f)(2)(A)-(B). Such orders include, but are not limited to, vacating and setting aside the judgment, releasing the petitioner from custody, resentencing, or even granting a new trial. K.S.A. 2015 Supp. 21-2512(f)(2)(B)(i)-(iv). Finally, if the DNA test results are inconclusive, the statute calls for some amount of discretion; the district court "may" order a hearing "to determine whether there is a substantial question of innocence." If the petitioner proves such a question exists, the court shall then follow the procedure for favorable test results. K.S.A. 2015 Supp. 21-2512(f)(3). Even when the statute allows for discretion—that is, when the statute indicates the district court "may" order a hearing if the tests are inconclusive—it still requires the court to make that determination and to take specific actions after making the necessary discretionary call. See K.S.A. 2015 Supp. 21-2512(f)(3) (directing, *e.g.*, that if the petitioner proves the inconclusive results present a substantial question of innocence, the court "shall proceed" as if the results were favorable).

Thus, regardless of the outcome of the test, the statute requires the district court to take *some* action thereafter—and an order granting testing does not terminate the proceedings. See *State v. Denney*, 283 Kan. 781, 789, 156 P.3d 1275 (2007) (describing

11

"clear" statutory procedure); *Haddock*, 282 Kan. at 495 (referring to the statute's "mandatory dispositions"). Given these requirements, the order allowing testing can more appropriately be labeled an interim or interlocutory order than a final order. Although there are a few permissible interlocutory appeals that may be brought by the prosecution (*e.g.*, an order suppressing evidence), an order granting postconviction DNA testing is not among them. See K.S.A. 2015 Supp. 22-3603. Plus, the State did not attempt to use the interlocutory appeal statute as the basis for jurisdiction. See *Berreth*, 294 Kan. at 114 ("[T]here must be some point in the appellate process with the Court of Appeals by which the appellant is required to expressly declare its elected basis for jurisdiction. This is particularly true when the appellant is the State because its mere election can determine whether the defendant will be affected by the court's decision.").

We therefore approve of the Court of Appeals' conclusion that an order granting postconviction DNA testing must be followed by additional proceedings and is therefore not a final judgment from which the State may appeal on a question reserved. *LaPointe*, 51 Kan. App. 2d at 747-49.

2. *The eventual finality of the postconviction DNA testing proceedings does not serve to make the order from which the State actually appealed a final judgment.*

The State also argues that even if there was no final judgment when it filed its June 2014 notice of appeal, the matter is *now* final—and, indeed, was final before the Court of Appeals issued its ruling—and thus the Court of Appeals could have exercised jurisdiction over the merits. See *LaPointe*, 51 Kan. App. 2d at 748 ("We know now that the district court did not order a new trial [even though the DNA testing was favorable to LaPointe].").

12

Some additional facts and procedural history explain the basis for this argument. After the State filed its appeal, the testing ordered by the district court occurred, the test results were received, and the district court conducted additional proceedings. Although the DNA test results had basically excluded LaPointe as the source of two hairs found on a piece of clothing that was recovered by the police in their investigation of the crime, the State argued this new evidence would not result in a different trial outcome. At trial, the State had called an expert who testified that "the probability" or "most likely outcome" was that the hairs found by police were not LaPointe's. The State suggested to the Court of Appeals that it had always acknowledged there was no scientific evidence tying LaPointe to the crimes and that the main evidence against him came from a coconspirator, who testified that he and LaPointe planned and executed the robbery. Thus, the results of the DNA testing would make no difference to the trial. The district court essentially agreed with the State's arguments and denied LaPointe's motion for a new trial in April 2015, which was about 10 months after the State filed this appeal.

In light of these additional proceedings, the State now argues its notice of appeal "could be treated as a premature notice" of appeal that should be allowed to lie dormant until the district court finally resolved LaPointe's motion for new trial, at which point the case as a whole would move forward on appeal. Since there is now a final judgment, the State urges, the Court of Appeals could exert jurisdiction over the appeal. We reject this argument because the circumstances of this case differ from the dormancy cases on which the State constructs its argument, which derive from the seminal case of *State v. Hall*, 298 Kan. 978, 319 P.3d 506 (2014).

In *Hall*, the appellant's premature notice of appeal sought review *of the final judgment*—the judgment of conviction and sentence, including restitution—after a prison term had been imposed and restitution had been ordered but before the amount of

13

restitution had been settled. Then in a subsequent notice of appeal, the appellant again sought review of the final judgment; by this point, restitution had been settled and all aspects of the judgment were final. Under those circumstances, this court held:

> "[I]n a criminal matter, where judgment is effective once pronounced from the bench, a premature notice of appeal that seeks review of a conviction and sentencing yet to be completed lies dormant until final judgment including the entire sentence is pronounced from the bench. At that point, the notice of appeal becomes effective." *Hall*, 298 Kan. at 988.

See *Hess v. St. Francis Regional Med. Center*, 254 Kan. 715, 718, 869 P.2d 598 (1994) ("It is a fundamental proposition of Kansas appellate procedure that an appellate court only obtains jurisdiction over the rulings identified in the notice of appeal."). Significantly, in *Hall* and similar cases, the subsequent notice duplicates the premature notice and, in essence, consolidates appeals that sought review of a final judgment and prevents piecemeal proceedings.

Here, in contrast to *Hall* and similar cases, piecemeal appeals can arise—and, in fact, have arisen—through the procedure the State asks us to endorse. This results, in part, because the State, as the appellant, never sought an appeal from the final judgment. Rather, the State only appeals the order granting testing—which, as we have held above, represents a midpoint in the K.S.A. 2015 Supp. 21-2512 proceedings. The State does not want review of the final order, which was favorable to the State's position. But LaPointe, who was not aggrieved by the midpoint order, has appealed the final order denying him a new trial; a separate appeal has been docketed (No. 113,580) and remained pending before the Court of Appeals while the State pursued this appeal before us. In that separate appeal, the State cross-appealed and argued, among other things, that any error by the district court in deciding the DNA results did not justify a new trial and had to be

14

considered harmless because LaPointe was not even qualified to pursue DNA testing. In other words, in two separate appeals, the State has raised the legal issue of whether LaPointe and offenders like him are entitled to postconviction DNA testing under K.S.A. 2015 Supp. 21-2512. And in one (No. 113,580), the State attempts to affect the outcome of the case. Piecemeal appeals have resulted. We now know the separate appeal before the Court of Appeals has concluded, see *State v. LaPointe*, No. 113,580, 2016 WL 6910200 (Kan. App. 2016) (unpublished opinion), which if anything underscores the dangers and procedural pitfalls of piecemeal appeals.

Yet Kansas follows "the ancient federal policy against piecemeal appeals." *Fredricks v. Foltz*, 221 Kan. 28, 31, 557 P.2d 1252 (1976); see *State v. Sales*, 290 Kan. 130, 139, 224 P.3d 546 (2010) (discussing interlocutory appeals under K.S.A. 22-3603). Requiring all claims of error to be raised in a single appeal serves a number of important purposes:

> "It emphasizes the deference that appellate courts owe to the trial judge as the individual initially called upon to decide the many questions of law and fact that occur in the course of a trial. Permitting piecemeal appeals would undermine the independence of the district judge, as well as the special role that individual plays in our judicial system. In addition, the rule is in accordance with the sensible policy of 'avoid[ing] the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment.' [Citations omitted.] The rule also serves the important purpose of promoting efficient judicial administration." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374, 101 S. Ct. 669, 66 L. Ed. 2d 571 (1981).

To allow the State's notice of appeal to lie dormant would be inconsistent with this policy and its purpose. If the Court of Appeals panel in this case had addressed the merits in this appeal before the district court entered its final order, that ruling would

15

undoubtedly have influenced the district court. This is true even if the panel specified that its decision should not affect LaPointe himself in light of the rule that a question reserved does not affect the defendant in the case. Thus, the appeal would have been contrary to the first purpose noted in *Risjord*—*i.e.*, "[p]ermitting piecemeal appeals would undermine the independence of the district judge, as well as the special role that individual plays in our judicial system." 449 U.S. at 374. Further, even if the district court had already reached its decision before the Court of Appeals panel in this case had decided the merits of the equal protection issue, the first panel's decision could have been cited to the second panel—the one hearing LaPointe's appeal from the district court's final order. This duplication of process would be contrary to the other policy reasons noted in *Risjord* because it would increase costs and promote judicial inefficiency rather than efficiency. 449 U.S. at 374. In addition, because one Court of Appeals panel has the right to disagree with a previous panel of the same court, *State v. Urban*, 291 Kan. 214, 223, 239 P.3d 837 (2010), inconsistent rulings could result. While that potential is inherent in the Court of Appeals process of hearing cases in separate panels rather than en banc, such inconsistency within the same case is not—in fact, the rules are designed to avoid that possibility.

For all these reasons, we will not treat a State's question-reserved appeal from an interim order allowing postconviction DNA testing as a premature appeal that may lie dormant until a final judgment is entered. Accordingly, we conclude that the eventual finality of the district court's process did not impact the finality of the district court's order granting DNA testing in LaPointe's case.

16

3. *The finality of LaPointe's underlying criminal judgment does not constitute a final judgment for purposes of a question-reserved appeal in this case.*

The State presents an alternative argument urging us to assess finality by focusing on LaPointe's underlying criminal conviction. It contends the judgment of conviction and sentence supplies the necessary finality for a question-reserved appeal of the district court's order granting postconviction DNA testing.

The State is nominally correct in that LaPointe's underlying criminal judgment is unquestionably final: He was convicted and sentenced over 10 years ago, and all of his direct criminal appeals have been concluded. See *State v. LaPointe*, No. 93,709, 2006 WL 2936496, at *3 (Kan. App. 2006) (unpublished opinion) (affirming LaPointe's convictions and sentences on direct appeal), *rev. denied* 283 Kan. 932 (2007); see also *State v. Tafoya*, 304 Kan. 663, 666-67, 372 P.3d 1247 (2016) ("The final judgment in a criminal case is the sentence."). These facts certainly separate LaPointe's situation from question-reserved appeals involving defendants who had *not* yet been convicted and sentenced and were still in the middle of pending criminal prosecutions—cases cited and relied upon by the Court of Appeals. See *LaPointe*, 51 Kan. App. 2d at 748 (citing and discussing *Grimes*, 229 Kan. at 146 [State's attempt to appeal from district court's order granting a new trial]; *Puckett*, 227 Kan. at 911 [State's attempt to appeal from district court's order granting defendant's motion to withdraw his nolo contendere pleas]). LaPointe's situation is also distinct from the dozens of cases discussing question-reserved appeals when a judgment of acquittal has been entered and any court order could no longer affect the defendant; those cases, too, are final. See, *e.g.*, *State v. Busse*, 231 Kan. 108, 108-09, 112, 642 P.2d 972 (1982); *State v. Jones*, 229 Kan. 528, 625 P.2d 503 (1981); *State v. Rodgers*, 225 Kan. 242, 589 P.2d 981 (1979); *State v. Crozier*, 225 Kan. 120, 587 P.2d 331 (1978); *State v. V.F.W. Post No. 3722*, 215 Kan. 693, 694-95, 527 P.2d 1020 (1974); *Chittenden*, 212 Kan. 178.

Nevertheless, the State has not convinced us that the finality of LaPointe's conviction is the finality that matters here. In essence, it has failed to persuade us that every order following LaPointe's sentence is "final" for purposes of question-reserved appeals. While the final judgment the State relies on—the underlying criminal conviction—was already appealed, the present issue is a new matter filed within LaPointe's old criminal case. See *LaPointe*, 51 Kan. App. 2d at 748 ("But we are not dealing with the original criminal judgment here; we are dealing with an order for DNA testing."); see also *Denney*, 283 Kan. at 793-94 (suggesting that K.S.A. 21-2512 proceedings are not a continuation of a criminal trial but are instead legislatively created procedures). And that new matter needs to reach finality before any appeal is taken.

The reasons we have just explained for not holding the State's notice of appeal dormant apply equally to this argument. We are understandably reluctant to hold that every order following a conviction and sentence, no matter the context in which the order arose, is "final" for purposes of question-reserved appeals—to do so would likely encourage a plethora of appeals that are interlocutory in nature, piecemeal appeals, and potentially conflicting outcomes. We hold, therefore, that an order allowing postconviction DNA testing cannot be considered final for purposes of a question-reserved appeal simply because a judgment of conviction and sentence has been entered in a case.

4. *The State's references to civil jurisdiction principles are not persuasive in LaPointe's case.*

For its fourth argument, the State reminds us that its notice of appeal from the district court's order granting testing did not only refer to its right to appeal in a criminal case upon a question reserved—it also mentioned a civil appeal provision, K.S.A. 2015

18

Supp. 60-2102(a)(2), which relates to appeals in actions seeking an injunction or mandamus, quo warranto, or habeas corpus relief. Before the Court of Appeals, the State argued the district court's order allowing DNA testing "granted an injunction or granted relief in the form of mandamus, both of which are appealable under K.S.A. 60-2102(a)(2)." In the State's petition for review, it notes that injunctions can be a provisional remedy—that is, a temporary remedy designed to preserve the status quo pending final judgment. In addition, the State argues in its supplemental brief that "a question reserved appeal is akin to appeal under the Collateral Order Doctrine in civil cases." See *Kansas Medical Mut. Ins. Co. v. Svaty*, 291 Kan. 597, 612, 244 P.3d 642 (2010) (collateral order doctrine is to be sparingly applied and only when a court order "'[1] conclusively determine[s] the disputed question, [2] resolve[s] an important issue completely separate from the merits of the action, and [3] [is] effectively unreviewable on appeal from a final judgment.'").

The State's arguments touch on the reality that postconviction DNA testing issues have reached the appellate courts as both civil and criminal appeals. Indeed, the State's instant appeal was labeled "Criminal," but its later cross-appeal from the April 2015 district court's order denying LaPointe's motion for a new trial was labeled "Civil." This reality is arguably inevitable given the ambiguity of the postconviction DNA testing statute, which does not clearly classify the process as either criminal or civil. The statute merely directs that petitions for postconviction DNA testing are to be filed with "the court that entered the judgment," and no statutory language prohibits a petitioner from filing the petition in the underlying criminal docket as LaPointe did in this case. K.S.A. 2015 Supp. 21-2512(a). Yet 21-2512 petitions are not purely criminal, either, as such proceedings are necessarily postconviction, and the ultimate remedies contemplated by the statute—including an offender's release—have the hallmarks of civil, habeas actions. See *Denney*, 283 Kan. at 793 (referencing "our holding that the [K.S.A. 21-2512]

19

proceeding, whether characterized as a continuation of the original trial or new litigation, is not a criminal prosecution," which in context referred to whether an offender was entitled to all the rights a criminal defendant enjoys during trial). In fact, sometimes 21-2512 petitions will be filed alongside a habeas motion, or a habeas motion might be construed as including a 21-2512 petition. See *Haddock*, 282 Kan. at 492-93; *Bruner v. State*, 277 Kan. 603, 605, 88 P.3d 214 (2004). These cases have been treated as civil actions in accordance with Supreme Court Rule 183(a)(1)-(2) (2017 Kan. S. Ct. R. 222), which states that a K.S.A. 60-1507 motion "is an independent civil action that must be docketed separately," and "the procedure on a motion under K.S.A. 60-1507 is governed by the rules of civil procedure, K.S.A. 60-201 *et seq*., to the extent the rules are applicable." See *State v. Berreth*, 294 Kan. 98, 109, 111, 273 P.3d 752 (2012).

The State's arguments about civil jurisdictional principles and the ambiguities that arise from the diverse treatment of 21-2512 petitions deserve attention at some point. But this is not the case for doing so because the State's arguments confront insurmountable procedural barriers. First, following the State's reasoning would require us to recast LaPointe's arguments and his chosen procedural vehicle; the State has never argued LaPointe could not have sought relief via a criminal action. As the Court of Appeals aptly noted:

> "To now consider this appeal on the ground that it is 'analogous to a civil case,' we would have to ignore the State's stated basis for jurisdiction in its notice of appeal and opening brief and recharacterize LaPointe's 'motion for post-conviction DNA testing,' which was filed by counsel in his criminal case, as a civil petition for mandamus or injunction." *LaPointe*, 51 Kan. App. 2d at 750.

Second, the State's notice of appeal specifically identified this appeal as a question-reserved appeal and its brief to the Court of Appeals "based its claim of appellate

jurisdiction solely on the existence of a question reserved." 51 Kan. App. 2d at 749-50. At most, before the Court of Appeals the State argued this appeal was "analogous to a civil case." And while the State added to its arguments in proceedings before this court, it still only argues that the appeal is "akin" to a civil appeal—it still frames its issue and its arguments in the context of a question reserved. Under analogous circumstances in *Berreth*, this court looked to the State's docketing statement, which referenced criminal question-reserved jurisdiction and bore the district court's criminal case number and concluded "the State was unable to expand its elected, and repeatedly asserted, statutory basis for jurisdiction in the Court of Appeals." 294 Kan. at 115-16. The State's petition for review and supplemental brief do not counter the panel's conclusion that principles of criminal jurisdiction afford the determinative analysis in this appeal.

Thus, we reject the State's attempts to recast the procedural vehicle chosen by LaPointe and to use principles of civil jurisdiction to control appellate jurisdiction in its present appeal, which it brought as a criminal appeal. The State clearly sought to invoke the courts' criminal jurisdiction powers over a question reserved. As we have discussed, a final judgment is required in order for a question-reserved appeal to be filed, and that requirement is not met in this case. Because allowing an appeal to proceed on the nonfinal judgment in this case has resulted in piecemeal appeals, we decline to wade through the legal questions of whether the statutory language allows combining question-reserved appeals and appeals under K.S.A. 2015 Supp. 60-2102(a)(2). We also decline the State's invitation to consider whether the collateral order doctrine might apply because under the facts of this case, at least, we are not persuaded the State could meet that doctrine's third requirement of showing that the issue is effectively unreviewable on appeal from a final judgment.

CONCLUSION

We hold that the district court's May 2014 order granting testing—the order from which the State appealed in this case—was not a final order and could not be appealed by the State upon a question reserved. Because this was the only appellate avenue open to the State in this particular criminal appeal, we conclude the State had no statutory right to appeal the order and the Court of Appeals correctly determined it lacked jurisdiction to hear the merits of the case.

The judgment of the Court of Appeals is affirmed; the State's appeal is dismissed for lack of jurisdiction.

Dismissed.